218 N.J. Super. 218 (1987)
527 A.2d 486
CLAIRE PRAET, EXECUTRIX OF THE ESTATE OF ROBERT PRAET, DECEASED, AND CLAIRE PRAET, INDIVIDUALLY, PLAINTIFF-APPELLANT,
v.
BOROUGH OF SAYREVILLE, SAYREVILLE POLICE DEPARTMENT, R. BEBERT, IN HIS CAPACITY AS A PATROLMAN OF THE SAYREVILLE POLICE DEPARTMENT, C. SIEMINSKI, IN HIS CAPACITY AS A PATROLMAN OF THE SAYREVILLE POLICE DEPARTMENT, RAY SZKODNY, IN HIS CAPACITY AS A PATROLMAN OF THE SAYREVILLE POLICE DEPARTMENT, A. COX, IN HIS CAPACITY AS A PATROLMAN OF THE SAYREVILLE POLICE DEPARTMENT, DOUG SPRAGUE, IN HIS CAPACITY AS A PATROLMAN OF THE SAYREVILLE POLICE DEPARTMENT, JEFFREY SPRAGUE, IN HIS CAPACITY AS A PATROLMAN OF THE SAYREVILLE POLICE DEPARTMENT, AND RAYMOND SUCHCICKI, IN HIS CAPACITY AS A PATROLMAN OF THE SAYREVILLE POLICE DEPARTMENT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 12, 1987.
Decided June 8, 1987.
*220 Before Judges PRESSLER, BAIME and ASHBEY.
Howard M. Nirenberg argued the cause for appellant (Weiner, Ostrager, Fieldman & Zucker, attorneys; Richard J. Weiner, of counsel; Howard Nirenberg and Sandra N. Varano, on the brief).
Robert John Aste argued the cause for respondents (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys; Elliott Abrutyn, of counsel and on the brief; Robert Aste also on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Plaintiff Claire Praet, individually and as executrix of the estate of her husband Robert Praet, brought this action to recover damages resulting from his death, which she claimed to have been caused by the negligence of defendants, a group of Sayreville police officers, who responded to the scene of his one-car accident. She appeals from the entry of summary judgment dismissing her complaint. We reverse, concluding that the trial judge erred in holding that the action was barred by the Good Samaritan Act, N.J.S.A. 2A:62A-1 and -2.
*221 According to the record on the summary judgment motion, it is apparently undisputed that decedent, while driving in Sayreville, struck a pole. His car overturned, leaving him with only minor cuts and lacerations but trapped inside the vehicle. Officers of the Sayreville Police Department promptly arrived at the scene and unsuccessfully attempted to extricate the decedent first by trying to pry open the driver's door and then by trying to pull him out of the rear hatch. A few minutes later the officers noticed smoke rising from the car. They suppressed the smoke with fire extinguishers which they obtained from their police cars and requested police headquarters to dispatch a fire truck to the scene as well as all other police cars equipped with fire extinguishers. Smoke or fire rose from the car approximately five more times, and each time the officers put it out. Ultimately, however, the fire extinguishers were emptied, and while decedent was still trapped inside and before the arrival of a fire engine, the car erupted into flames. A fire engine which then arrived extinguished the flames, and a first aid squad, using a hydraulically powered tool, extricated the decedent from the vehicle. The decedent had, however, suffered massive burns, which caused his death two months later.
Plaintiff's complaint against the officers alleged their negligence both in failing to extricate decedent from the car and in failing to prevent the fire. She also alleged that the public-entity defendants, the Sayreville Police Department and the Borough of Sayreville, were negligent in having failed properly to train and instruct its employees in correct rescue techniques and in having failed properly to allocate municipal resources involving rescue and fire equipment. In support of her claims against the officers and relying on the report of her proposed expert witness, plaintiff identified a fatal series of basic errors the officers allegedly made in their rescue efforts. First, they did not ascertain whether the door lock button was in the open or closed position before they tried to pry the door open. The door was in fact locked and had it been unlocked by raising the lock button, it is likely that decedent could have been quickly *222 extricated. Moreover, the officers did not attempt to determine whether decedent's seat could be reclined before they unsuccessfully tried to pull him out through the rear hatch. It was in fact reclinable, and had it been reclined, he could likely have been removed from the car before the fire. Most significantly, however, the fire, which was electrical in origin, could have been entirely averted had the officers either turned off the ignition during their rescue efforts or disconnected the battery cables. Finally, the officers, in violation of express police department procedures, failed to call the fire department until the smoke first appeared, approximately seven minutes after the first officer had arrived on the scene. The prompt arrival of a fire engine during that seven minutes would also have averted the tragedy.
Based on the foregoing recital, we are completely satisfied that plaintiff, at least in the context of the pretrial status of this action, had demonstrated a viable cause of action against all defendants cognizable under the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq., 59:2-2(a), 59:3-1(a). And see Hake v. Manchester Tp., 98 N.J. 302 (1985); Battista v. Olson, 213 N.J. Super. 137 (App.Div. 1986); Suarez v. Dosky, 171 N.J. Super. 1 (App.Div. 1979), certif. den., 82 N.J. 300 (1980). The trial judge was nevertheless persuaded by defendants' assertion, upon which they predicated their successful summary judgment motion, that the action was barred by the Good Samaritan Act, 2A:62A-1.
The trial court's reasoning rested upon N.J.S.A. 59:3-1(b), which provides that
The liability of a public employee established by this act is subject to any immunity of a public employee provided by law and is subject to any defenses that would be available to the public employee if he were a private person.
The judge then concluded that the Good Samaritan Act affords an incorporated immunity within the intendment of this section of the Tort Claims Act. The Good Samaritan Act provides that
Any individual, including a person licensed to practice any method of treatment of human ailments, disease, pain, injury, deformity, mental or physical *223 condition, or licensed to render services ancillary thereto, who in good faith renders emergency care at the scene of an accident or emergency to the victim or victims thereof, shall not be liable for any civil damages as a result of any acts or omissions by such person in rendering the emergency care. [N.J.S.A. 2A:62A-1]
We are, however, persuaded by the legislative history of the Good Samaritan Act and the public policy underlying its enactment that it does not and never was intended to confer an immunity on one, who, whether a public employee or a private person, has a preexisting duty under the controlling circumstances to render emergency assistance. Thus, since the officers here, as defendants concede, were under a duty by virtue of their employment to render emergency assistance to victims of automobile accidents, they are as much liable for their negligence in so doing as they would be for the negligent performance of any other administrative or ministerial duty imposed upon them by their employment.
The Good Samaritan Act, when first adopted in this State in 1963 by L. 1963, c. 140, offered immunity only to those licensed persons to whom the act presently applies. The accompanying statement explained that
Frequently persons receive no emergency care when needed, because persons licensed to practice the healing arts or render services ancillary thereto at the scene of an accident or emergency are fearful their actions taken in good faith to care for the injured person might subsequently subject them to civil suit. The purpose of this bill is to encourage the rendering of aid to injured persons at the scene of an accident or emergency without fear of civil liability. This shall be known as "The Good Samaritan Act of 1963."
In 1968, the Act was amended to extend its applicability to "[a]ny individual," not just a health care licensee, who renders emergency assistance. See L. 1968, c. 254, § 1. Although the Legislative statement does not expressly so state, it is clear that the purpose of the Act was to respond to the common-law rule that while one is under no obligation to volunteer emergency assistance to another, he is nevertheless liable if he chooses to but does so negligently. See, e.g., 2 Restatement, Torts 2d, § 314 at 116 and § 324 at 142 (1965). See also 2 Harper & James, Torts, § 18.6 at 1044-1053 (1956); Prosser, Torts (3d ed. *224 1964), § 54 at 336-339. And cf. Wells v. Wilbur B. Driver Co., 121 N.J. Super. 185, 203 (Law Div. 1972), holding, albeit in a different context, that
An individual may not be obligated to perform a service for another, yet, upon his voluntary undertaking to act, may be found liable in tort for negligently performing or failing to perform the service gratuitously assumed, even in the absence of a contractual undertaking.
Thus, the grant of legislative immunity to a volunteer was designed, simply and obviously, to encourage gratuitous assistance by those who have no legal obligation to render it.
The common-law rule, which imposes no independent duty of rescue at all and relieves a bystander from any obligation to come forward, patently has no relevance whatsoever to one who has either a contractual, relational, or a transactional duty to render assistance. If one already has such a duty, it is that duty which impels him to act. He therefore does not require and is not entitled to an immunity which is designed only to encourage action by one who has no preexisting legal duty to act. See generally 2 Restatement, Torts 2d, §§ 321 to 324A at 132-145. Thus, the threshold question in determining the applicability of the Good Samaritan Act is whether the person claiming its immunity had a preexisting duty. That these police officers had that duty here is, as we have noted, conceded. See, so holding, Lee v. State, 490 P.2d 1206 (Alaska 1971), in which the Court rejected the reliance on the Alaska Good Samaritan Act by a state trooper who had accidentally shot a child while attempting to rescue her from a caged lion in an amusement park who had grabbed her arm. Noting that no reported case in the country had apparently yet considered "the applicability of a Good Samaritan Act to a policeman," id. at 1209, the court went on to hold that those under a preexisting duty of rescue, such as the state trooper there, are not entitled to its protection.
Defendants seek to distinguish Lee v. State by pointing out that the Alaska statute, unlike New Jersey's, is expressly applicable only to those rescuers who act "without expecting *225 compensation." They thus argue that the New Jersey statute was intended to be applicable to all rescuers, not merely gratuitous volunteers. We reject this thesis as wholly untenable. First, as the Alaska court explained and we concur, the unifying purpose of the Good Samaritan Acts passed by 42 states and the District of Columbia, irrespective of their varying forms of language, "is to induce voluntary rescue by removing the fear of potential liability which acts as an impediment to such rescue." Id. Moreover, it was the New Jersey Legislature itself who accorded this statute the designation "Good Samaritan Act." N.J.S.A. 2A:62A-2. Surely, the Legislature must be assumed to have understood both the denotation and connotation of the concept of the Good Samaritan as representing the quintessential gratuitous volunteer. See New Testament, Luke 10:30-37. We also conclude that by its use of the term "good faith" in describing the immune action of the rescuer, the Legislature intended to impart the notion of one who voluntarily assumes an obligation since one acting under a duty is compelled to act not only in good faith but also reasonably. Finally, we point out that at least one other jurisdiction whose Good Samaritan Act is phrased in the same terms as ours has not hesitated to exclude from the grant of immunity those having a preexisting duty to render aid. See, e.g., Lindsey v. Miami Development Corp., 689 S.W.2d 856 (Tenn. 1985).
Our conclusion that the Good Samaritan Act does not apply to those, including police officers, who have a preexisting duty to act requires reversal of the summary judgment entered as to all defendants but one. The record before the trial court on the motion made clear, beyond any factual dispute, that defendant Raymond Suchcicki was not present at the scene of the accident during the rescue efforts but was called in immediately thereafter to perform a supplemental investigation. We agree with the trial court that under these facts there was no basis for a liability finding against this officer.
*226 The summary judgment is affirmed insofar as it dismisses the complaint against defendant Raymond Suchcicki. It is reversed insofar as it dismisses the complaint against all other defendants, and the action is remanded to the trial court for further proceedings.