OPINION OF THE COURT
STAPLETON, Circuit Judge:
Appellant Sidney Lundy suffered a heart attack while a patron at appellee’s casino, TropWorld Casino (“TropWorld”), in Atlantic City, New Jersey. While he survived, Lundy was left with permanent disabilities. Lundy and his wife here appeal from a summary judgment entered against them by the district court. Their appeal raises two issues: (1) what duty, if any, did TropWorld owe under New Jersey law to provide medical care to Lundy, and (2) whether the Lundys were entitled to amend their complaint to include an additional defendant, Dr. Dominic Carlino.[1]
The district court held that TropWorld’s duty is, at most, to provide basic first aid to the patron when the need becomes apparent and to take reasonable steps to procure appropriate medical care. Because the court found no evidence that TropWorld was negligent in carrying out this duty to Lundy, it granted TropWorld’s motion for summary judgment. With regard to the Lundys’ motion to amend, the court found that the amendment would not relate back to the time of the fifing of the complaint under Rule 15(c) and, accordingly, that the alleged claim against Dr. Carlino would be barred by limitations. We will affirm.

I. FACTUAL BACKGROUND

On August 3, 1989, Lundy, a 66 year old man with a history of coronary artery disease, was patronizing TropWorld Casino. *1175 While Lundy was gambling at a blackjack table, he suffered cardiac arrest and fell to the ground unconscious. Three other patrons quickly ran to Lundy and began to assist him. The first to reach him was Essie Greenberg (“Ms. Greenberg”), a critical care nurse. Ms. Greenberg was soon joined by her husband, Dr. Martin Greenberg (“Dr. Greenberg”), who is a pulmonary specialist. The third individual who aided Lundy did not disclose his identity, but he indicated to Dr. Greenberg that he was a surgeon. During his deposition, Dr. Greenberg stated that, when he first arrived on the scene, Lundy was unresponsive, not breathing, and without a pulse. Dr. Greenberg testified that he, his wife, and the surgeon immediately began to perform cardiopulmonary resuscitation (“CPR”) on Lundy.
Meanwhile, the blackjack dealer at the table where Lundy had been gambling pushed an emergency “call” button at his table which alerted TropWorld’s Security Command Post that a problem existed. The Security Command Post is electronically designed to designate the location from which such alarms are triggered and record the time that the alarm is sounded. The alarm was recorded as being received at 10:57 p.m. Noting that the source of the alarm was “Pit 3,” a Security Command Post employee notified by phone the security post located on the casino floor near where Lundy had suffered his cardiac arrest. At 10:59 p.m., the Security Command Post employee sent radio directions to all of the guards on the casino floor requesting that they each go to Lundy’s location.
A sergeant in TropWorld’s security force and a TropWorld security guard arrived at the blackjack table apparently within fifteen seconds of their receiving the radio message from the Security Command Post. The Greenbergs and the unidentified surgeon were already assisting Lundy. Upon arriving, the security guard called the Security Command Post on her hand-held radio and requested that someone contact the casino medical station, which was located one floor above the casino. Several witnesses agree that Nurse Margaret Slusher (“Nurse Slush-er”), the nurse who was on-duty at the casino medical station at the time, arrived on the scene within a minute or two of being summoned. As soon as Nurse Slusher arrived, she instructed the security guards to call for an ambulance. TropWorld’s records indicate that an ambulance was summoned at 11:00 p.m.
Nurse Slusher brought with her an ambu-bag,[2] oxygen, and an airway.[3] She did not, however, bring an intubation kit[4] to the scene. Dr. Greenberg testified that he asked Nurse Slusher for one and she told him that it was TropWorld’s “policy” not to have an intubation kit on the premises. Dr. Green-berg also noted that Nurse Slusher told him that she previously worked at a different casino which did have an intubation kit in its medical station, and that she had requested one here as well. Nurse Slusher testified at her deposition that some of the equipment normally found in an intubation kit was stocked in TropWorld’s medical center,[5] but that she did not bring this equipment with her because she was not qualified to use it.
Nurse Slusher proceeded to assist the three patrons in performing CPR on Lundy. Specifically, Nurse Slusher placed the ambu-bag over Lundy’s face while the others took *1176 turns doing chest compressions. The ambu-bag was connected to an oxygen source. Dr. Greenberg testified that he was sure that air was entering Lundy’s respiratory system and that Lundy was being adequately oxygenated during the period when he was receiving both CPR treatment and air through the ambu-bag. Dr. Greenberg went on to say that the only reason he had requested an intubation kit was “[t]o establish an airway and subsequently provide oxygen in a more efficient manner.” App. 228.
The TropWorld Security Command Post radio log reflects that an Emergency Medical Technician (“EMT”) unit arrived at Trop-World by ambulance at approximately 11:03 p.m. The EMT’s report lists 11:02 p.m. as the time of arrival. Based on the fact that he performed CPR “for what seemed like an extensive amount of time,” Dr. Greenberg estimated that “at least twenty minutes” elapsed between the time Lundy suffered cardiac arrest and the time the EMT unit arrived at Pit 3. App. 220.
Upon the arrival of the EMT unit, a technician, with the help of the two doctor patrons, attempted to intubate Lundy using an intubation kit brought by the EMT unit. Dr. Greenberg claimed that, due to Lundy’s stout physique and rigid muscle tone, it was a very difficult intubation, and that there were at least a half dozen failed attempts before the procedure was successfully completed. After intubation, Lundy regained a pulse and his color improved. According to EMT reports, the ambulance departed from TropWorld with Lundy at 11:27 p.m., and it arrived at the Atlantic City Medical Center, which is located less than one mile from TropWorld, at 11:29 p.m.
The Lundys filed this diversity action against TropWorld less than two weeks before the applicable statute of limitations expired on August 3, 1991.[6] TropWorld filed an answer to the Lundys’ complaint on September 12, 1991, along with a third-party complaint against a Dr. Carlino. TropWorld alleged that, in the event it were held liable to the Lundys, it would be entitled to either contribution or indemnification from Dr. Car-lino.
TropWorld had a contract with Dr. Carlino providing that he would run an in-house medical station to supply medical services for TropWorld’s employees, guests, and patrons in cases of work-related injuries and injuries or sicknesses occurring on the premises. The contract required that Dr. Carlino provide a licensed physician on the casino premises for five hours each day, and a physician “on-call” for the rest of the day. Any physician selected by Dr. Carlino was subject to dismissal by TropWorld for good cause only. Furthermore, Dr. Carlino was obligated to have a registered nurse present in the medical station during the hours that the casino was open. Each nurse was to be chosen by Dr. Carlino, but was subject to dismissal by TropWorld for any reason whatsoever. The contract specifically stated that Dr. Carlino’s status would be that of an independent contractor and the doctors and nurses at the station were to be employees of Dr. Carlino. In August of 1989, Nurse Slusher was a registered, licensed nurse with over fifteen years of experience.
Dr. Carlino’s contract with TropWorld required him to stock the medical station with certain designated medical hardware, including a Puritan-Bennett Manual Resuscitator (i.e. an ambu-bag with oxygen), intravenous solutions for cardiopulmonary resuscitation, a cardiac board, an oxygen cylinder with nasal canula and mask, and a laryngoscope with intubation tube.[7] The contract, which was signed on December 11, 1987, required that medical services be performed for a period of two years in exchange for a flat fee from TropWorld.
According to the Lundys, they did not know that Nurse Slusher was employed by an organization other than TropWorld until TropWorld filed its third party complaint against Dr. Carlino on September 11, 1991. By this time, however, the two-year statute of limitations had expired. Eight months later, the Lundys filed a motion under Fed. R.Civ.P. 15(c) to amend their original com *1177 plaint to add third party defendant Dr. Carli-no as an original party defendant. This motion was granted by a magistrate judge on July 8, 1992.
Upon the completion of discovery, Trop-World filed a motion for summary judgment which was joined by Dr. Carlino. Dr. Carli-no also filed an appeal from the order of the magistrate judge granting the Lundys’ Rule 15(e) motion. The district court granted the motion for summary judgment and reversed the magistrate’s order granting the Rule 15(e) motion.

II. THE DISTRICT COURT’S DECISION

The district court held that TropWorld had fulfilled its duty to Lundy under New Jersey law. The court found that TropWorld had “immediately summoned medical attention for Mr. Lundy once it became aware of his need for it.” App. 651-52. Additionally, the court stated that “the very fact that Trop-World contracted with Dr. Carlino is evidence that it fulfilled its duty to aid injured patrons by having at least a registered nurse available, trained in emergency care, who could immediately size up a patron’s medical situation and summon appropriate emergency medical personnel and equipment by ambulance to respond to the patrons’s (sic) emergency needs.” App. 652. The court also found that the Lundys’ case failed for “lack of proof of deviation from the standard of medical care.”[8] App. 655.
Additionally, the court held that New Jersey’s Good Samaritan Statute, N.J.StatAnn. § 2A:62A-1 (West 1993), shielded TropWorld and its employees from liability for any acts or omissions they took while rendering care in good faith to Lundy. Finally, the court held that the casino could not be held liable for any of Nurse Slusher’s actions because she was an employee of independent contractor Dr. Carlino, rather than an employee of TropWorld.
Turning to the Lundys’ Rule 15 motion to add Dr. Carlino as a party defendant, the district court found that neither the version of Rule 15(c) in effect at the time of the filing of the Lundys’ motion nor the subsequently amended version of that Rule permits a plaintiff, after the running of the statute of limitations, to add an entirely new defendant of whom the plaintiff had been unaware during the limitations period. The court stated that Rule 15(c) “applies only to problems of misnomer and misidentification and not the addition of an entirely different party.” App. 632. Furthermore, the court held that, even if Rule 15(c) were interpreted as permitting the addition of previously unidentified parties, the Lundys’ amended complaint did not relate back to their original complaint because Dr. Carlino did not receive notice of a claim by the Lundys against him within the 120-day period as required by subsection (3) of the Rule.
Our review of the district court’s decision to grant summary judgment is plenary. Wheeler v. Towanda Area Sch. Dist., 950 F.2d 128, 129 (3d Cir.1991). Because the district court’s decision regarding the Rule 15(c) motion was based on the court’s interpretation of the Federal Rules of Civil Procedure, we exercise plenary review of this decision as well. International Union, UAW v. Mack Trucks, Inc., 917 F.2d 107, 110 (3d Cir.1990), cert. denied, 499 U.S. 921, 111 S.Ct. 1313, 113 L.Ed.2d 246 (1991).[9]

*1178
III. TROPWORLD’S MOTION FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure state that a court may grant summary judgment only if there is no genuine issue as to any material fact and if the moving party is subject to judgment as a matter of law. Fed.R.Civ.P. 56(c). A dispute is “genuine” if “the evidence is such that a reasonable jury could return a verdict for the nonmoving party.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is “material” when it “might affect the outcome of the suit under the governing law.” Id. Disputes over facts which are irrelevant or unnecessary will not preclude a grant of summary judgment. Id.
The initial burdens of informing the court of the basis for a motion for summary judgment and identifying the portions of the record which demonstrate the absence of a genuine issue of material fact fall on the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If the moving party can satisfy these initial burdens, Rule 56(e) states that the nonmoving party “may not rest upon the mere allegations or denials of his [or her] pleadings, but his [or her] response ... must set forth specific facts showing that there is a genuine issue for trial.” Gans v. Mundy, 762 F.2d 338, 341 (3d Cir.) (citing Fed.R.Civ.P. 56(e)), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985). However, any reasonable inferences that can be drawn from the record must be viewed in the light most favorable to the party opposing the motion. Sorba v. Pennsylvania Drilling Co., Inc., 821 F.2d 200, 202-03 (3d Cir.1987), cert. denied, 484 U.S. 1019, 108 S.Ct. 730, 98 L.Ed.2d 679 (1988). It is with this standard in mind that we review the district court’s decision to grant TropWorld’s motion for summary judgment.
The Lundys cannot, and do not, claim that TropWorld was responsible in any way for Mr. Lundy’s medical emergency. Nor do they claim that TropWorld breached a duty to procure competent aid from the outside with reasonable expedition. Rather, as we understand it, the Lundys advance two theories of liability against TropWorld. First, the relationship between a casino and its patrons gives rise to a duty to provide medical care, and TropWorld breached this duty when it failed to have on-site the equipment and skilled personnel necessary to perform an intubation. Second, TropWorld breached a voluntarily assumed duty by failing to provide Dr. Greenberg, upon his request, with the laryngoscope with intubation tube that was available in the medical station. We will address each theory in turn. Because there are no New Jersey Supreme Court cases which clearly delineate the duties owed by casino ownership to patrons suffering medical emergencies, we must predict how that court would rule on this question. Kleinknecht v. Gettysburg College, 989 F.2d 1360, 1366 (3d Cir.1993).
A.
Generally, a bystander has no duty to provide affirmative aid to an injured person, even if the bystander has the ability to help. See W. Page Keeton et ah, Prosser and Keeton on the Law of Torts § 56, at 375 (5th ed. 1984). New Jersey courts have recognized, however, that the existence of a relationship between the victim and one in a position to render aid may create a duty to render assistance. See, e.g., Praet v. Borough of Sayreville, 218 N.J.Super. 218, 527 A.2d 486, 489 (App.Div.1987). In Szabo v. Pennsylvania R.R. Co., 132 N.J.L. 331, 40 A.2d 562 (Err. & App.1945), for example, New Jersey’s highest court held that, in the absence of a contract or statute, an employer generally has no duty to provide medical service to treat an ill or injured employee, even if the illness or injury was the result of the employer’s negligence. However, if the employee, while engaged in the work of his or her employer, sustains an injury rendering him or her helpless to provide for his or her own care, the employer must secure medical care for the employee. Id., 40 A.2d at 563. If a casino owner in New Jersey owes no greater duty to its patrons than an employer owes its employees while they are engaged in the employer’s business, we think *1179 it clear that TropWorld did not fail in its duty to render assistance.
The Lundys insist, however, that Trop-World had a duty beyond that recognized in Szabo. They urge specifically that the Supreme Court of New Jersey would adopt the rule set forth in the Restatement (Second) of Torts § 314A (1965). Section 814A states in pertinent part:
(1) A common carrier is under a duty to its passengers to take reasonable action
(a) to protect them against unreasonable risk of physical harm, and
(b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
(2) An innkeeper is under a similar duty to its guests.
(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.
We think it likely that the Supreme Court of New Jersey would accept the principles enunciated in § 314A and would apply them in a case involving a casino and one of its patrons. We need not so hold, however. The pertinent commentary following § 314A indicates that the duty “to take reasonable action ... to give ... first aid” in times of emergency requires only that carriers, innkeepers and landowners procure appropriate medical care as soon as the need for such care becomes apparent and provide such first aid prior to the arrival of qualified assistance as the carrier’s, innkeeper’s or landowner’s employees are reasonably capable of giving. Clearly, the duty recognized in § 314A does not extend to providing all medical care that the carrier or innkeeper could reasonably foresee might be needed by a patron. Specifically, the commentary states:
f. The defendant ... [i]n the case of an ill or injured person ... will seldom be required to do more than give such first aid as he reasonably can, and take reasonable steps to turn the sick man over to a physician, or to those who will look after him and see that medical assistance is obtained.
Nurse Slusher was a registered, licensed nurse who had been trained in emergency care and who had fifteen years of nursing experience. The uncontradicted evidence was that, despite this training and experience, she was not competent to perform an intubation. It necessarily follows that the duty which the Lundys insist the New Jersey Supreme Court would recognize in this case would require casinos to provide a full-time on-site staff physician. Certainly, maintaining on a full-time basis the capability of performing an intubation goes far beyond any “first aid” contemplated by § 314A. We are confident the New Jersey Supreme Court would decline to impose liability on TropWorld for failing to maintain that full-time capability.
B.
The Lundys further claim that, even if there would otherwise be no duty to provide a level of care encompassing intubation, TropWorld voluntarily assumed a duty to provide such care and breached that duty by negligently failing to provide it. As we understand the argument, TropWorld voluntarily assumed this duty in two ways. First, by contracting with Dr. Carlino to have a laryngoscope with intubation tube on the premises, TropWorld voluntarily assumed the duty of having it available for use on request. Second, by voluntarily undertaking to assist Mr. Lundy, TropWorld assumed a duty to use due care in providing that assistance and breached this duty when Nurse Slusher failed to bring the laryngoscope with intubation tube to Dr. Greenberg. In connection with this second argument, the Lun-dys rely upon the principles outlined in § 324 of the Restatement (Second) of Torts which provides:
One who, being under no duty to do so, takes charge of another who is helpless adequately to aid or protect himself is subject to liability to the other for any bodily harm caused to him by
(a) the failure of the actor to exercise reasonable care to secure the safety of the other while within the actor’s charge, or
(b) the actor’s discontinuing his aid or protection, if by so doing he leaves the *1180 other in a worse position than when the actor took charge of him.
As we have indicated, TropWorld’s medical center, as a result of its contract with Dr. Carlino, did have a laryngoscope with intubation tube as part of its inventory of equipment. Nurse Slusher did not bring this equipment with her when she was summoned to Pit 3, however. She brought only that equipment that she was qualified to use: the ambu-bag, oxygen, and an airway. At some point after her arrival on the scene, Dr. Greenberg asked for an intubation kit. While the Lundys do not expressly so state, we understand their contention to be that Nurse Slusher should have returned to the medical center at this point and retrieved the intubation tube for Dr. Greenberg’s use and TropWorld is liable for her failure to do so. They suggest that her failure to do so was the result of an ill-considered TropWorld policy that she was not permitted to use intubation equipment.
We reject the notion that TropWorld, by contracting with Dr. Carlino, voluntarily assumed a duty to Mr. Lundy it would not otherwise have had. The Lundys have referred us to no New Jersey case law supporting this proposition and we have found none.
The Lundys’ argument based on § 324 of the Restatement, ignores the fact that the principles restated therein have been materially altered by New Jersey’s Good Samaritan Act, § 2A:62A-1 N.J.Stat. Ann. That Act provides that anyone “who in good faith renders emergency aid at the scene of an ... emergency to the victim ... shall not be liable for any civil damages as a result of acts or omissions by such person in rendering the emergency care.” We believe the Supreme Court of New Jersey would hold that this mandate protects TropWorld from liability in the situation before us.
The Lundys do not, and cannot, assert that there was bad faith here.[10] Rather, they seek to avoid the effect of New Jersey’s Good Samaritan Act by relying on what is known as the “preexisting duty” exception to the Act. Under this exception, the Act provides no immunity from liability if the duty allegedly breached by the volunteer was a duty that existed prior to the voluntary activity. See, e.g., Praet v. Borough of Sayreville, 218 N.J.Super. 218, 527 A.2d 486 (1987) (police officers who have a preexisting duty to render emergency assistance to a motorist trapped in a car may be held liable for failing to extricate motorist and prevent fire). We do not believe the preexisting duty exception is applicable under New Jersey law in a situation, like the present one, where the preexisting duty is a limited one and the alleged negligence is the failure to provide a level of assistance beyond that required by the preexisting duty.
We think this becomes apparent when one focuses on the purposes of the Good Samaritan Act and the preexisting duty exception and on the nature of the preexisting duty in this case. The purpose of the Good Samaritan Act is to encourage the rendering of assistance to victims by providing that the voluntary rendering of aid will not give rise to any liability that would not otherwise exist. The preexisting duty exception recognizes that fulfillment of this objective of the statute can be accomplished without the eradication of preexisting duties.
Nurse Slusher had no preexisting duty to Lundy apart from her role as an employee of TropWorld (or, arguably, as an employee of an independent contractor of TropWorld). Nurse Slusher, if she had been a fellow patron, for example, would have had no preexisting duty obligation and she would have been fully protected by the Good Samaritan Act. Thus, the only relevant preexisting *1181 duty for purposes of applying the Act under New Jersey law is the preexisting duty owed by TropWorld to Mr. Lundy. That preexisting duty, as we have seen, was a duty limited to summoning aid and, in the interim, taking reasonable first aid measures. It did not include the duty to provide the medical equipment and personnel necessary to perform an intubation. It follows, we believe, that Nurse Slusher’s conduct with respect to the providing or withholding of the intubation equipment on the premises was not conduct with respect to which she or TropWorld owed a preexisting duty to Lundy. It further follows that, if TropWorld is responsible for the assistance voluntarily provided by Nurse Slusher, it is protected by the Act from liability arising from her alleged negligence in failing to provide that intubation equipment.[11] Accordingly, we conclude that TropWorld’s motion for summary judgment was properly granted.

IV. THE LUNDYS’ MOTION TO AMEND

Rule 15(c) sets forth the circumstances under which an amendment to a pleading will relate back to the date of the original pleading for limitations purposes. Prior to December 1, 1991, an amendment that “ehange[d] the party against whom a claim was asserted” related back to the date of the original complaint only if (1) “the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading,” (2) within the period provided for commencing an action against the new party, the new party received such notice of the institution of the action that the new party would not be prejudiced in maintaining a defense on the merits, and (3) within that same period, the new party knew or should have known that “but for a mistake concerning the identity of the proper party,” the action would have been originally filed against him or her. An amendment to Rule 15(c) which became effective on December 1, 1991, changed the second and third of these requirements by deleting the references to the period for commencement of an action and by substituting “the period provided by Rule 4(j) for the service of the summons and complaint.” Rule 4(j) provides that if the summons and complaint are not served “within 120 days after the filing of the complaint and the party on whose behalf such service was required cannot show good cause why service was not made within that period, the action shall be dismissed.” The Lundys contend that their amended complaint adding Dr. Carlino relates back to the date of the original complaint under the amended version of Rule 15(c) because all of the requirements of the rule were met within 120 days of the filing of their original complaint.[12]
The 1991 amendment also added to Rule 15(c) a new subsection (c)(1) providing that an “amendment of the pleadings relates back to the date of the original pleading when (1) relation back is permitted by the law that provides the statute of limitations applicable to the action.” The Lundys urge that this provision is applicable to all amended com *1182 plaints, including those that change the party against whom a claim is asserted. We accept this contention for present purposes.
Because the current version of Rule 15(c) came into effect after the original complaint was filed here, but while the case was still pending, there is some question as to whether the previous version of the rule governs, or whether the current version of the rule should be retroactively applied. However, because we believe that the Lundys’ attempted amendment would not relate back to their original complaint under either version of Rule 15(c), we need not answer the question of retroactivity.
Dr. Carlino did not receive any notice of the institution of the Lundys’ action within the applicable statute of limitations, which expired on August 3, 1991. Therefore, the Lundys’ amendment would clearly not relate back to the original complaint if the previous version of Rule 15(c) applies.
Analysis under the current version of Rule 15(c) is a bit more complicated, yet it leads us to the same result. The complaint was filed on July 22, 1991, which was about two weeks before the expiration of the statute of limitations on August 3, 1991. The one hundred and twentieth day after the filing was November 19, 1991. The Lundys correctly point out that Dr. Carlino had received TropWorld’s cross-claim on September 12, 1991 and had thus become aware of the existence of the suit at that time. The Lundys further stress that Dr. Carlino answered the cross-claim on October 18, 1991, and undoubtedly had reviewed their original complaint prior to filing that answer. It is their original complaint that the Lundys insist put Dr. Carlino on notice that “but for a mistake concerning identity of the proper party,” the action would have been brought against him. Accordingly, we turn to that relatively brief complaint.
After identifying the parties and making the necessary jurisdictional allegation, the Lundys’ complaint reads in relevant part:
2.At all times material hereto, Defendant acted, and failed to act, by and through its agents, servants, work persons and employees in the course and scope of employment.
3. On or about August 3, 1989, while Plaintiffs were business invitees lawfully on Defendant’s premises, Plaintiff, Sidney Lundy, suffered a cardiac arrest.
4. At all time [sic] material hereto, Defendant, as the owner in possession of a hotel, restaurant and gambling complex open to the public, was under a duty to its business invitees to have proper first aid facilities and personnel available to its business invitees and was also under a duty to its business invitees to take reasonable action to render first aid to such business invitees, when necessary.
5. At all time material hereto, Defendant knew, and had reason to know, that Plaintiff had suffered a cardiac arrest and required first aid, oxygen and other medical attention.
6. Defendant negligently, recklessly and carelessly failed to perform its duty to Plaintiff by failing to have such emergency-first aid facilities, oxygen or medical personnel available.
7. Although Defendant telephoned for an ambulance to take Plaintiff to the hospital, it otherwise rendered no first aid or emergency medical treatment whatsoever to Plaintiff, despite his crucial need for same.
8. Due to all the foregoing, Defendant increased the likelihood of harm to the Plaintiff.
9. Due to all the foregoing, Defendant negligently, recklessly and carelessly caused serious and permanent bodily injuries to Plaintiff and caused aggravation and exacerbation of Plaintiff’s injuries and hypoxic encephalopathy.
App. 10-11.
We agree with the Lundys that Dr. Carli-no received notice of the existence of the litigation within 120 days of the filing of the complaint. We cannot agree, however, with their position that during that period he “knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought *1183 against” him. Like the district court, we conclude to the contrary.[13]
The Lundys’ complaint asserted a claim against TropWorld on the theory that “as the owner in possession of a ... gambling complex open to the public” it had a duty to its business invitees that it breached by (1) failing to have “emergency-first aid facilities, oxygen or medical personnel available” and (2) by rendering “no first aid or emergency medical treatment whatsoever” to Mr. Lun-dy. This may or may not have appeared to Dr. Carlino to be a viable theory of liability against TropWorld. Clearly it must have communicated to him that the Lundys intended to sue someone else. Dr. Carlino would not have been liable under the theory advanced in the complaint, however, and we perceive no reason why it should have led Dr. Carlino to believe the Lundys intended to sue him and had failed to do so because of a mistake concerning identity.[14]
Where there is a basis for the plaintiff to assert liability against the party or parties named in a complaint and there is no reason for another party to believe that the plaintiff did anything other than make a deliberate choice between potential defendants, courts have consistently held that the third requirement of Rule 15(c)(3) is not met. See, e.g., Lovelace v. O’Hara, 985 F.2d 847 (6th Cir.1993) (complaint alleges theory of liability against public officer in official capacity; no basis for believing claim against official in individual capacity intended); Hernandez Jimenez v. Calero Toledo, 604 F.2d 99, 103 (1st Cir.1979) (“appellees could very well have believed that they were not named as parties in the original action for tactical reasons or because appellant lacked evidence of their alleged participation in the conspiracy when he filed the complaint”); Great Northeastern Lumber & Millwork Corp. v. Pepsi-Cola Metropolitan Bottling Co., Inc., 785 F.Supp. 514, 516 (E.D.Pa.1992) (manufacturer of component part in product liability situation “may have believed plaintiff made a deliberate choice rather than a ‘mistake’ in deciding not to join [it]”).
This is such a case. The complaint gave Dr. Carlino no reason during the relevant period to believe that the Lundys had intended to sue him. Indeed, after TropWorld filed a cross-claim against him on September 12, 1991, and the Lundys failed during the remaining 51 days of the 120 day period to amend to join him, Dr. Carlino had affirmative reason to believe that the Lundys did not wish to assert liability against him.
*1184 Finally, we turn to the Lundys’ contention that, because their amended complaint against Dr. Carlino relates back under New Jersey law, we should hold that it relates back here under the provisions of Rule 15(c)(1), as amended in 1991.
Rule 4:9-3 of the New Jersey Rules of Court states:
When Amendments Relate Back
Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.
(emphasis added). This provision is virtually identical to the original version of Rule 15(e). Like that Rule, New Jersey’s Rule 4:9-3 requires that for an amendment changing, or, presumably, adding a party to relate back, the new party must receive notice of the institution of the action prior to the running of the applicable statute of limitations. See Townsend v. Great Adventure, 178 N.J.Super. 508, 429 A.2d 601, 607 (App.Div.1981) (an amendment adding an additional defendant did not relate back to the original complaint pursuant to Rule 4:9-3 when there was “no showing that [the new defendant] received notice within [the applicable statute of limitations] that any action had been instituted by [plaintiff] against any person for his injuries and losses.”). Because Dr. Carlino did not receive any notice of the Lundys’ suit prior to the expiration of the statute of limitations, the Lundys’ amendment does not relate back to their original complaint under New Jersey law. Accordingly, we reject the Lundys’ argument that their claim against Dr. Carlino relates back to the date of their original complaint under Fed.R.Civ.P. 15(c), as amended in 1991.

V. CONCLUSION

The judgment of the district court will be affirmed.

. The proposed amendment would have added both Dr. Carlino and Dr. Domenic Frank Carli-no, a Professional Association. For simplicity, we will refer to both as Dr. Carlino.

. Dr. Greenberg testified that an ambu-bag is a "device that's utilized to assist in respiration when a person is either unable to breathe on his own or is having difficulty breathing.... It's usually a cylindrical-sort-of-shaped plastic bag with a face mask attached to it that is applied over the person's mouth and nose, and subsequent pressure on the bag will allow for air to be entered into the person’s nose and mouth.... It’s [a] purely mechanical [device].” App. 213-14.

. The device known as an airway is a plastic apparatus that keeps the mouth open and holds the tongue in place. App. 165.

. According to Dr. Greenberg, an intubation kit consists of equipment that is used to insert an endotracheal tube into an individual, thereby establishing a more efficient airway than that which can be established with an ambu-bag.

. Nurse Slusher testified that she did not bring either the laryngoscope or endotracheal tubes with her, which, according to Dr. Greenberg, are pieces of equipment normally found in an intubation kit.

. The applicable limitations period is two years. See NJ.Stat.Ann. § 2AJ4-2 (West 1987).

. According to Dr. Greenberg, these are all items that are typically included in an intubation kit.

. The Lundys presented the court with a report from an expert which stated, inter alia:
(1) It is correct to say that intubation allowed for an improved exchange of oxygen that accounted for his improvement in color.
(2) It is correct to say that, had the intubation equipment been available to the pulmonary physician who was doing CPR, Mr. Lundy’s condition would have been better.
(3) It is also correct that, to a reasonable degree of medical certainty, had Mr. Lundy been intubated sooner, there would have been a decreased likelihood of harm.
The court found that even if it accepted the Lundys’ expert’s opinion as completely true, which it was required to do for the purposes of summary judgment, the expert in no way suggested that the standard of care that casino ownership must meet includes having an intubation kit on the premises. The expert opinion addressed only causation and not duty. App. 653-55.

. We exercise appellate jurisdiction over this case pursuant to 28 U.S.C. § 1291. The district court had subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 based on *1178 diversity of citizenship between the parties and an amount in controversy in excess of $50,000.

. Nurse Slusher's refusal to retrieve the intubation kit from her office does not constitute bad faith. Indeed, the record paints a picture of a good faith effort to revive Lundy and to maintain his respiration and pulse pending the arrival of the emergency medical technicians. The purpose of the Act is precisely to promote such commendable gratuitous undertakings as that exemplified by TropWorld. See Praet, 527 A.2d at 489 (“[T]he grant of legislative immunity to a volunteer was designed, simply and obviously, to encourage gratuitous assistance by those who have no legal obligation to render it.”); id.., 527 A.2d at 488 (" 'The purpose of [the Act] is to encourage the rendering of aid to injured persons at the scene of an accident or emergency without fear of civil liability.' ”) (quoting legislative history of original bill).

. At times, the Lundys appear to be arguing that TropWorld, by putting intubation equipment on its premises, voluntarily assumed a duty beyond its preexisting duty to take reasonable first aid measures and that TropWorld is, accordingly, liable for a breach of that voluntarily assumed duty. If the Lundys do so argue, we believe there are two answers. First, the Good Samaritan Act would protect TropWorld from liability arising from its voluntary activity. Second, a decision voluntarily to provide intubation equipment for the use of physician employees of an independent contractor who were known to be qualified to use it does not constitute a decision voluntarily to provide such equipment to strangers who volunteer assistance at the site of an emergency. These decisions involve distinctly different considerations, and we are confident that the Supreme Court of New Jersey would not regard them as equivalent.

. This case accordingly does not involve the issue of the circumstances under which the period for applying the second and third requirements may be longer than 120 days. Specifically, the Advisory Committee Notes following Rule 15 state that "this rule allows not only the 120 days specified in [Rule 4] but also any additional time resulting from any extension ordered by the court pursuant to that rule, as may be granted, for example, if the defendant is a fugitive from service of the summons.” Here, the Lundys do not suggest that Dr. Carlino’s knowledge was greater at some other potentially relevant point than it was during the 120 day period.

. The magistrate judge concluded that Dr. Car-lino had reason to believe the Lundys, but for a mistake concerning the identity of the proper party, would have sued him. Accordingly, the magistrate judge granted the Lundys' motion to amend under Rule 15. This ruling was disposi-tive of Dr. Carlino’s statute of limitations defense and the district court, accordingly, was free to rule de novo on the issue presented by this third requirement of Rule 15(c). Fed.R.Civ.P. 72(b). We review the district court's finding on that issue under a clearly erroneous standard. Varlack v. SWC Caribbean, Inc., 550 F.2d 171, 174 (3d Cir.1977). While the district court described the magistrate judge’s conclusion as "clearly erroneous," it owed no deference to that conclusion. Nor do we. We do not disagree, however, with the district court's characterization of the magistrate judge's conclusion as being “clearly erroneous."

. This case does not require us to decide whether Rule 15(c) applies in a situation where a proposed defendant should have known that, but for a mistake concerning the identity of the proper party, the plaintiff would have sued both the original defendant and the proposed defendant. We may assume that Rule 15(c) does cover such a situation. Dr. Carlino’s only information, during the relevant period, concerning the Lundys’ intent in filing their complaint was the information contained in that complaint. The Lundys there complained only about an alleged failure to provide emergency equipment and personnel and about an alleged failure to provide any “emergency medical treatment whatsoever.” These allegations provide a basis for claims by the Lun-dys against TropWorld and possibly cross-claims by TropWorld against Dr. Carlino for breach of contract. However, the Lundys have suggested no legal theory under which these allegations could provide a basis for a claim by the Lundys against Dr. Carlino. If there be such a theory, it is sufficiently creative that we do not believe Dr. Carlino should be held to have anticipated it. As the district court stressed, there is no allegation in the Lundys’ complaint that treatment of Mr. Lundy was undertaken by an employee of Trop-World who provided such treatment negligently. Accordingly, we are not faced with the issue of whether Dr. Carlino should have known that, but for a mistake concerning the identity of the employer of an employee alleged to be negligent in the complaint, the Lundys should have sued both TropWorld and Dr. Carlino.