2006 ND 127

Jerric D. BALLENSKY, Plaintiff
and Appellant

v.

Jan Marie FLATTUM–RIEMERS,
M.D., Defendant and Appellee

Hazen Memorial Hospital Association,
d/b/a Sakakawea Medical Center and
Missouri Slope Medical Arts, and Mis-
souri Slope Medical Arts, a partner-
ship of Jan Flattum–Riemers and
Roger Kulas, Defendants.

No. 20050277.

Supreme Court of North Dakota.

June 5, 2006.

Michael Ray Hoffman, Bismarck, N.D., for plaintiff and appellant.

Michael T. Andrews, Vogel Law Firm, Bismarck, N.D., for defendant and appellee.

SANDSTROM, Justice.

[¶ 1] Jerric D. Ballensky appeals from a summary judgment dismissing his lawsuit against Dr. Jan Flattum–Riemers for damages for breach of the physician-patient privilege. We conclude Ballensky's failure to file his complaint after one defendant's demand to file the complaint does not void service of the summons as to other defendants, Ballensky presented sufficient evidence to raise a factual dispute about whether he was damaged by Dr. Flattum–Riemers' alleged unauthorized disclosure of privileged information, and Ballensky presented sufficient evidence to raise a factual dispute about whether Dr. Flattum–Riemers made a good faith report to a highway patrol officer under N.D.C.C. § 43–17–41(1993). We reverse and remand.

I

[¶ 2] In October 1995, Dr. Flattum–Riemers treated Ballensky for injuries he sustained in a motor vehicle accident in which Ballensky was the driver and Ballensky's friend, a passenger in the vehicle, was killed. The accident occurred when

Ballensky's vehicle inexplicably swerved into the wrong lane of a state highway and collided with an oncoming vehicle. Both Dr. Flattum–Riemers and a highway patrol officer investigating the accident testified in their depositions that they did not believe Ballensky was under the influence of alcohol or drugs at the time of the accident. Dr. Flattum–Riemers nevertheless ordered a drug screen as part of her treatment of Ballensky. Ballensky tested positive for cannabinoids, and Dr. Flattum–Riemers provided the results of the drug screen to the highway patrol officer investigating the accident. According to Dr. Flattum–Riemers, she also told the officer the decedent's family was interested in the results, and she told the family that they needed to talk to the officer. The State ultimately charged Ballensky with manslaughter, and he subsequently pled guilty to negligent homicide.

[¶ 3] In a complaint dated October 16, 1997, and served on Dr. Flattum–Riemers on October 18, 1997, Ballensky alleged Dr. Flattum–Riemers breached the physician-patient privilege by informing the highway patrol officer on October 17, 1995, that Ballensky "had tested positive for the presence of marijuana in his urine." Ballensky alleged the highway patrol officer was investigating the motor vehicle accident and the information provided by Dr. Flattum–Riemers to the officer was used against Ballensky in the criminal prosecution for negligent homicide. He claimed Dr. Flattum–Riemers' actions injured him physically and emotionally and he suffered economic and noneconomic damages under N.D.C.C. § 32–03.2–04.

[¶ 4] Ballensky's complaint also named Hazen Memorial Hospital Association, doing business as Sakakawea Medical Center, as a defendant. In November 2000, Hazen Memorial Hospital served Ballensky with a demand to file the complaint, which informed Ballensky if the complaint was not filed within 20 days, the summons was void under N.D.R.Civ.P. 4(c)(3). According to Ballensky, he decided not to pursue his lawsuit against Hazen Memorial Hospital, and he did not file his complaint until February 2004. In April 2004, Ballensky voluntarily dismissed his lawsuit against Hazen Memorial Hospital.

[¶ 5] The district court subsequently granted Dr. Flattum–Riemers' motion for summary judgment, concluding (1) Ballensky's lawsuit was barred by the two-year statute of limitations for medical malpractice actions because the summons and complaint were served on Dr. Flattum–Riemers one day after the statute of limitations had run, and (2) Ballensky failed to state a cause of action upon which relief could be granted because any damage incurred by him resulted from his own conduct in pleading guilty to negligent homicide.

[¶ 6] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. § 27–05–06. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–27–01.

II

[¶ 7] We consider the issues raised in this appeal in the posture of summary judgment, which is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that reasonably can be drawn from the undisputed facts, or if the only issues to be resolved are questions of law. *Johnson v. Nodak Mut. Ins. Co.*, 2005 ND 112, ¶ 9, 699 N.W.2d 45. A party moving for summary judgment must show there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. *Green v. Mid*

*Dakota Clinic*, 2004 ND 12, ¶ 5, 673 N.W.2d 257. On appeal, we view the evidence in the light most favorable to the opposing party, and that party must be given the benefit of all favorable inferences. *Hurt v. Freeland*, 1999 ND 12, ¶ 7, 589 N.W.2d 551. Whether a district court properly granted summary judgment is a question of law that we review de novo on the entire record. *Johnson*, at ¶ 9.

### III

[¶ 8] On appeal, Ballensky argues the district court erred in granting summary judgment under the two-year statute of limitations for medical malpractice actions in N.D.C.C. § 28–01–18(3), because his action is not a medical malpractice action. He argues that even if his action is characterized as a medical malpractice action, it was commenced within the two-year period in N.D.C.C. § 28–01–18(3), because the sheriff for Mercer County received the summons and complaint on October 16, 1997. Ballensky asserts he complied with N.D.C.C. § 28–01–38(1), which provides that an action is commenced when the summons, with intent that it actually shall be served, is delivered to the sheriff of the county in which the defendant resides. *See Long v. Jaszczak*, 2004 ND 194, ¶ 11, 688 N.W.2d 173 (an action begins when summons is delivered to the sheriff). In her appellate brief to this Court, Dr. Flattum–Riemers admitted the district court overlooked that Ballensky had delivered process to the sheriff, and during oral argument, Dr. Flattum–Riemers conceded the court erred in concluding Ballensky's lawsuit was not commenced within the applicable statute of limitations.

[¶ 9] Relying on *Howes v. Kelly Services, Inc.*, 2002 ND 131, 649 N.W.2d 218, Dr. Flattum–Riemers nevertheless argues Ballensky's service of the summons on her became void under N.D.R.Civ.P. 4(c)(3), because Ballensky did not file his complaint within twenty days after Hazen Memorial Hospital's November 2000 service on him of a demand to file the complaint. In *Howes*, at ¶ 12, the plaintiff sued three separate defendants for negligence. Two defendants separately answered and demanded a nine-person jury. *Id.* The third defendant, Kelly Services, answered but did not demand a jury trial. *Id.* Before trial, the other two defendants were dismissed from the lawsuit. *Id.* This Court held Kelly Services was entitled to rely on the other two defendants' demand for a nine-person jury. *Id.* at ¶ 16. Dr. Flattum–Riemers argues *Howes* controls this case, and she is entitled to rely upon her co-defendant's demand to file a complaint. She argues she relied on Hazen Memorial Hospital's demand, and because Ballensky undisputedly failed to file the complaint within twenty days of that demand under N.D.R.Civ.P. 4(c)(3), the service of the summons on her became void and Ballensky's claims are now time barred under any applicable statute of limitations.

[¶ 10] Ballensky argues service of process is personal, and although his service on Hazen Memorial Hospital became void, his service on Dr. Flattum–Riemers did not become void when he failed to file the complaint within twenty days after Hazen Memorial Hospital's demand. He argues the demand under N.D.R.Civ.P. 4(c)(3) was not made by Dr. Flattum–Riemers, and the summons did not become void as to her, but became void only as to Hazen Memorial Hospital. Ballensky argues *Howes* is distinguishable because it involved a demand for a jury trial and not a demand to file a complaint. He claims federal authority on jury requests and the applicable North Dakota rule both provide that once a request for a jury trial has

been made, it may not be withdrawn without consent of the "parties."

[¶ 11] We agree with Ballensky that *Howes* is not controlling. A jury demand by one party governs the trial of the entire action and may not be withdrawn under N.D.R.Civ.P. 38(e) without consent of the "parties." *See Howes*, 2002 ND 131, ¶ 16, 649 N.W.2d 218. A demand to file a complaint under N.D.R.Civ.P. 4(c)(3) relates to service of a summons upon a defendant, and if a plaintiff does not file a complaint within twenty days after service of the demand, service of the summons is void. Under our procedural rules, a demand to file a complaint is personal to the demanding defendant, and the fact a summons may be void as to one defendant does not void service of the summons as to other defendants. We conclude Ballensky's failure to file the complaint within twenty days after the demand by Hazen Memorial Hospital does not affect his claims against Dr. Flattum–Riemers.

## IV

[¶ 12] Ballensky argues the district court erred in granting summary judgment because damages are a question of fact. He argues he presented sufficient evidence to the district court to preclude summary judgment on damages, including evidence of emotional distress, embarrassment, and humiliation. He contends he lost his best friend in an automobile accident in which he was the driver and Dr. Flattum–Riemers' unauthorized release of privileged medical information provided an unwarranted explanation for the cause of the accident. Dr. Flattum–Riemers responds the district court properly granted her motion for summary judgment because no reasonable juror could conclude she caused Ballensky any harm. She argues the undisputed facts establish the results

of the drug screen were not used against Ballensky in the criminal prosecution.

[¶ 13] Under N.D.C.C. § 32–03.2–04, damages in a civil tort action may be awarded by the trier of fact as compensation for economic and noneconomic damages. *See Albrecht v. Metro Area Ambulance*, 2001 ND 61, ¶ 11, 623 N.W.2d 367 (award of economic damages is not a prerequisite to award of noneconomic damages for pain and suffering and similar injury). Noneconomic damages include damages arising from pain, suffering, inconvenience, mental anguish, emotional distress, humiliation, and other nonpecuniary damage. N.D.C.C. § 32–03.2–04. *See Albrecht*, at ¶ 11. A tort victim need not establish economic damages as a prerequisite to an award of noneconomic damages. *Albrecht*, at ¶¶ 11, 14. A trier of fact may consider wounded feelings, mental suffering, humiliation, degradation, and disgrace in deciding whether to award damages under N.D.C.C. § 32–03.2–04. *Blessum v. Shelver*, 1997 ND 152, ¶ 38, 567 N.W.2d 844. A determination of damages generally involves a question of fact. *Valley Honey Co. v. Graves*, 2003 ND 125, ¶ 21, 666 N.W.2d 453; *Volk v. Wisconsin Mortgage Assurance Co.*, 474 N.W.2d 40, 44 (N.D. 1991).

[¶ 14] According to Ballensky, he was going hunting with his friend on the day of the accident, and he had not been drinking alcohol or using marijuana. Ballensky testified in his deposition he did not recall how the accident happened, but he and the decedent were "horsing around, but [he did not] remember how." Ballensky presented evidence to the district court that indicated marijuana could have been in his system for up to two weeks before the accident, he displayed no visible signs of impairment when Dr. Flattum–Riemers examined him, both Dr. Flattum–Riemers and the investigating officer did not be-

lieve Ballensky was under the influence of alcohol or drugs when the accident occurred, the results of the drug screen prompted the charges against him, and there would have been no charges against him if Dr. Flattum–Riemers had not disclosed the privileged information to the investigating officer. According to Dr. Flattum–Riemers, she told the investigating officer the decedent's family was interested in the results of the drug test and she told the family that they needed to talk to the officer.

[¶ 15] Ballensky testified in his deposition:

Q. .... What other losses have you suffered or do you claim to have suffered?

....

A. Emotional distress, people looking down on me; basically embarrassment.

....

Q. .... What kind of emotional distress have you suffered, do you believe, as a result of having to plead guilty to the negligent homicide?

A. What do I believe? I believe that I have to live with the fact that everyone looks down on me for the rest of my life. The whole town talks of me. It makes me look bad because they think that I was using drugs at the time of the accident. It just don't look good on my part.

Q. Okay. So the emotional distress is primarily related to the people looking down on you in the community?

A. Yes.

Q. And when you say community, you're talking about what community?

A. Beulah.

Q. Has anyone in Beulah come up to you personally or made comments to

you about your actions—you know, when you say looking down on you?

A. There's been comments about a lot of people saying stuff; not only to me, to my parents, to my family.

Q. What comments have you heard that you believe, you know, caused people or you to believe that people are looking down on you?

A. What comments have I heard?

Q. Right.

A. Well, I've heard plenty about the whole accident situation, how they believe what happened and how it was all my fault; and—I don't know, just basic stuff about the accident, I guess.

Q. Is there anything else you can think about, comments made, specific comments, that tend to lead you to believe that you're being looked down upon, other than what you've just stated?

A. I hear about it all the time from my own friends, from my—I just—I just hear about it.

Q. What do your friends tell you?

A. They just talk about what happened, and the whole town knows about it. They all look at me funny. They all say that I'm a bad kid because of what happened, and I hear it from my friends because their parents tell them about me and about what happened in my accident.

[¶ 16] We conclude the evidence presented by Ballensky to the district court, viewed in the light most favorable to him, was sufficient to create a factual issue whether he suffered damages because of Dr. Flattum–Riemers' alleged unauthorized disclosure of privileged information. We therefore conclude the district court erred in granting summary judgment on this issue.

## V

■ [¶ 17] Dr. Flattum–Riemers nevertheless argues Ballensky failed to proffer the requisite expert opinion under N.D.C.C. § 28–01–46 for his lawsuit, which she asserts clearly sounds in medical malpractice. Dr. Flattum–Riemers claims Ballensky failed to meet his burden of demonstrating a prima facie case of medical negligence. Ballensky responds the applicable standard of care is established by law and a violation of that standard is established by the facts of this case.

■ [¶ 18] Courts have generally recognized a patient's right to recover damages from a physician for the unauthorized disclosure of medical information about the patient. *See Tehven v. Job Serv.,* 488 N.W.2d 48, 51 (N.D.1992) (affirming denial of unemployment compensation benefits to hospital employee who was terminated for violating hospital's confidentiality policy). *See generally* Judy E. Zelin, Annotation, *Physician's Tort Liability for Unauthorized Disclosure of Confidential Information About Patient,* 48 A.L.R.4th 668, § 2 (1986); 61 Am.Jur.2d *Physicians, Surgeons, and Other Healers* § 144 (2002). In *Tehven,* at 51, this Court said, "Courts have generally recognized a patient's right to recover damages from a physician for unauthorized disclosure of medical information as an invasion of privacy, a breach of the physician-patient confidential relationship, a violation of statute, or breach of the fiduciary relationship between a physician and a patient." Rule 503, N.D.R.Ev., establishes an evidentiary privilege that authorizes a patient to prevent any person from disclosing confidential communications made for the purpose of diagnosis or treatment. *See State v. Schroeder,* 524 N.W.2d 837, 840–42 (N.D.1994) (construing communications).

[¶ 19] In a lawsuit for professional negligence, N.D.C.C. § 28–01–46 generally requires a plaintiff to serve on the defendant an affidavit containing an admissible expert opinion supporting a prima facie case of professional negligence unless the plaintiff's claim fits within one of the statutory exceptions. *See Larsen v. Zarrett,* 498 N.W.2d 191, 192 (N.D.1993) (expert testimony not necessary to establish breach of duty so egregious that a layperson is capable of comprehending its enormity). The issue in this case is whether that statute applies to Ballensky's claim for breach of the doctor-patient privilege and, if so, whether one of the exceptions in that statute applies to his claim. The district court did not decide this issue, and on this record and without benefit of a district court ruling, we decline to address that issue.

## VI

■ [¶ 20] Dr. Flattum–Riemers also argues she is immune from liability under N.D.C.C. § 43–17–41 (1993) for her report to the highway patrol officer.

[¶ 21] Section 43–17–41, N.D.C.C. (1993), authorizes physicians to report certain information to a sheriff or state's attorney. At the time of Dr. Flattum–Riemers' 1995 report to the highway patrol officer, the statute, which was initially enacted in 1977 N.D. Sess. Laws ch. 403, § 1, and remained unchanged until 2001,[1] provided:

1. Any physician or other medical or mental health professional, who has under his charge or care or performs any professional services for

---

1. In 2001, the legislature amended N.D.C.C. § 43–17–41. *See* 2001 N.D. Sess. Laws ch. 379, § 1. The 2001 amendments essentially renumbered the subsections and added a new subsection with language about reports of domestic violence and reports of injuries from a sexual offense, but did not substantively change the language at issue in this case.

any person suffering from any wound, injury, or other physical trauma inflicted by his own act or by the act of another by means of a knife, gun, or pistol, or which he has reasonable cause to suspect was inflicted in violation of any criminal law of this state, shall as soon as practicable report the same to the sheriff or state's attorney of the county in which such care was rendered. The report must state the name of the injured person, if known, his whereabouts, and the character and extent of his injuries.

2. The reports mandated by this section must be made as soon as practicable and may be either oral or in writing. Oral reports must be followed by written reports within forty-eight hours if so requested by the sheriff or state's attorney to whom the oral report is originally made.

3. Any person required to report as provided by this section who willfully fails to do so is guilty of an infraction.

4. Any person making a report in good faith pursuant to this section is immune from liability for making said report.

[¶ 22] Statutory interpretation is a question of law, fully reviewable on appeal. *GO Comm. ex rel. Hale v. City of Minot*, 2005 ND 136, ¶ 9, 701 N.W.2d 865. The primary objective in interpreting a statute is to determine the legislature's intent. *Amerada Hess Corp. v. State ex rel. Tax Comm'r*, 2005 ND 155, ¶ 12, 704 N.W.2d 8. Words in a statute are given their plain, ordinary, and commonly understood meaning, unless defined by statute or unless a contrary intention plainly appears. N.D.C.C. § 1–02–02. Statutes are construed as a whole and are harmonized to give meaning to related provisions.

N.D.C.C. § 1–02–07. If the language of a statute is clear and unambiguous, "the letter of [the statute] is not to be disregarded under the pretext of pursuing its spirit." N.D.C.C. § 1–02–05. The language of a statute must be interpreted in context and according to the rules of grammar, giving meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1–02–03 and 1–02–38(2). We presume the legislature did not intend an unreasonable result or unjust consequences. N.D.C.C. § 1–02–38(3). We construe statutes to give effect to all of their provisions, so that no part of the statute is rendered inoperative or superfluous. N.D.C.C. § 1–02–38(2) and (4). A statute is ambiguous if it is susceptible to different, rational meanings. *Amerada,* at ¶ 12. If the language of a statute is ambiguous or doubtful in meaning, a court may consider extrinsic aids to determine legislative intent. N.D.C.C. § 1–02–39.

[¶ 23] The unambiguous language of N.D.C.C. § 43–17–41(1) (1993) required "[a]ny physician . . . who . . . performs any professional services for any person suffering from any wound, injury, or other physical trauma . . . which [the physician] has reasonable cause to suspect was inflicted in violation of any criminal law of this state" to "as soon as practicable report the same to the sheriff or state's attorney of the county in which such care was rendered." That statute provided the report may be oral or in writing and must state the name of the injured person, his whereabouts, and the character and extent of his injuries. N.D.C.C. § 43–17–41(1) and (2) (1993). That statute also granted immunity from liability to any person making a report in good faith. N.D.C.C. § 43–17–41(4) (1993).

[¶ 24] We construe that statutory language to provide a physician with immunity from liability for making a good faith report when the physician has treated a person for any wound, injury, or physical

trauma and has reasonable cause to suspect the wound, injury, or physical trauma was inflicted in violation of any criminal law of this state. The plain language of that statute authorizes the physician to make a report when the physician has reasonable cause to suspect an injury was inflicted in violation of any criminal law of the state and does not exclude motor vehicle accidents that may involve criminal violations.

[¶ 25] Our interpretation is consistent with a 1988 attorney general's opinion that construed N.D.C.C. § 43–17–41 (1993) to authorize a physician to report injuries or physical trauma received by an intoxicated driver as a result of a motor vehicle accident if the physician has reasonable cause to suspect the injuries or physical trauma were inflicted in violation of any criminal law of this state. N.D. Op. Atty. Gen. 1988–2. The attorney general's opinion concluded the intent of the statute was to require physicians to report all injuries that were, or may have been, suffered as a result of a criminal act to permit law enforcement authorities to immediately begin an investigation to determine the cause and circumstances surrounding the infliction of the injuries or physical trauma. *Id.* The attorney general's opinion explains that to the extent it conflicts with a June 20, 1977, attorney general's opinion, which was issued before N.D.C.C. § 43–17–41 (1993) became effective, the 1988 opinion should be followed. N.D. Op. Atty. Gen. 1988–2.

■■■■ [¶ 26] Formal opinions of the attorney general are entitled to respect, and courts should follow them if they are persuasive. *Roe v. Doe,* 2002 ND 136, ¶ 12, 649 N.W.2d 566. Although not binding on courts, an attorney general's opinion nevertheless has an important bearing on the construction and interpretation of a statute. *Edinger v. Governing Auth. of Stutsman County Corr. Ctr.,* 2005 ND 79,

¶ 13, 695 N.W.2d 447. The 1988 attorney general's opinion construing N.D.C.C. § 43–17–41 (1993) is persuasive and consistent with the principle that we construe privileges narrowly because they are in degradation of the search for the truth. *Trinity Med. Ctr. v. Holum,* 544 N.W.2d 148, 152 (N.D.1996); *Schroeder,* 524 N.W.2d at 840. We conclude N.D.C.C. § 43–17–41 (1993) provides a physician with immunity from liability for making a good faith report that the physician treated a person for an injury sustained in an automobile accident if the physician has reasonable cause to suspect the injury was inflicted in violation of any criminal law of this state, including driving under the influence of illegal drugs.

■■■■ [¶ 27] Under N.D.C.C. § 1–01–21, good faith means "an honest intention to abstain from taking any unconscientious advantage of another even through the forms or technicalities of law, together with an absence of all information or belief of facts which would render the transaction unconscientious." Good faith is generally a question of fact. *See Heng v. Rotech Med. Corp. and PSI Healthcare, Inc.,* 2004 ND 204, ¶ 26, 688 N.W.2d 389; *Diocese of Bismarck Trust v. Ramada, Inc.,* 553 N.W.2d 760, 769 (N.D.1996); *Belfield Educ. Ass'n v. Belfield Pub. Sch. Dist.,* 496 N.W.2d 12, 14 (N.D.1993).

[¶ 28] Here, both Dr. Flattum–Riemers and the investigating officer testified in their depositions that they did not believe Ballensky was under the influence of alcohol or drugs when the accident occurred. There was also evidence that marijuana may remain in a person's system for up to two weeks after use. On this record and viewing the evidence in the light most favorable to Ballensky, we decline Dr. Flattum–Riemers' invitation to rule, as a matter of law, her report to the investigating officer was made in good faith and she is immune from liability under N.D.C.C.

§ 43–17–41 (1993). Whether Dr. Flattum–Riemers' report was made in good faith is a question of fact not suitable for summary judgment.

## VII

[¶ 29] We reverse the judgment and remand for proceedings consistent with this opinion.

[¶ 30] GERALD W. VANDE WALLE, C.J., ZANE ANDERSON, D.J, DANIEL J. CROTHERS and MARY MUEHLEN MARING, JJ., concur.

[¶ 31] The Honorable ZANE ANDERSON, D.J., sitting in place of KAPSNER, J., disqualified.