2007 ND 69

**William CHAMLEY, Plaintiff and Appellant**

v.

**Inder V. KHOKHA, M.D., Mercy Medical Center, Defendants and Appellees**

and

**Salem S. Shahin, M.D., Defendant.**

**No. 20060261.**

Supreme Court of North Dakota.

May 8, 2007.

Richard H. McGee II (argued), McGee, Hankla, Backes & Dobrovolny, Minot, N.D., and Lee R. Bissonette (appeared), Bissonette Law Firm, P.A., Wayzata, MN, for plaintiff and appellant.

Lance D. Schreiner (argued) and Tracy Vigness Kolb (appeared), Zuger Kirmis & Smith, Bismarck, N.D., for defendant and appellee Inder V. Khokha, M.D.

John C. Kapsner (argued) and Kari R. Reichert (on brief), Vogel Law Firm, Bismarck, N.D., for defendant and appellee Mercy Medical Center.

MARQUART, District Judge.

[¶ 1] William Chamley appeals from summary judgments dismissing with prejudice his claims against Dr. Inder V. Khokha and Mercy Medical Center for the wrongful death of Rosie Chamley. The issue on appeal is whether the district court erred in granting Dr. Khokha's and Mercy Medical Center's motions for summary judgment on the basis of Dr. Khokha's immunity from suit and from liability under the Good Samaritan law. We reverse and remand, concluding the district court erred in granting summary judgment on the issues of Dr. Khokha's expectation of remuneration. We are of the opinion that Dr. Khokha, as a matter of law, had an expectation of remuneration under N.D.C.C. § 32–03.1–04 and is precluded from claiming immunity under the Good Samaritan Act.

I

[¶ 2] On February 2, 2004, Rosie Chamley was admitted to Mercy Medical Center to undergo a surgical procedure to remove kidney stones. This surgery was performed by her longtime urologist, Dr. Salem S. Shahin. Dr. Shahin is not an employee of Mercy Medical Center but had privileges to perform surgeries on his patients at the hospital. Following the surgery, Rosie Chamley experienced excessive bleeding to the point that her condition became life-threatening. Dr. Shahin returned her to the operating room for renal exploration to determine the cause of the bleeding. During renal exploration, Dr. Shahin concluded that the kidney would need to be removed. Dr. Shahin had difficulty visualizing the blood vessels both to and from the kidney. He requested Dr. Khokha to assist with the kidney

removal. Dr. Khokha, a Mercy Medical Center general surgeon with vascular credentials, was in the doctors' lounge waiting for surgical personnel so he could perform a scheduled surgery on his own patient. At the time, Dr. Khokha was a salaried hospital employee and staff physician at the hospital. When Dr. Khokha was told Dr. Shahin needed his help, he went immediately into the operating room and assisted with Rosie Chamley's kidney removal. At some point during the kidney removal, Rosie Chamley's vena cava was damaged and had to be repaired by Dr. Khokha. This repair stopped Rosie Chamley's internal bleeding, but the following day she was transferred to a Bismarck hospital where she later died.

[¶ 3] In a complaint dated February 9, 2005, Rosie Chamley's son, William Chamley, alleged Dr. Khokha and Mercy Medical Center, Dr. Khokha's employer, were responsible for Rosie Chamley's wrongful death under chapter 32–21, N.D.C.C. William Chamley also sued Dr. Shahin, but these parties have settled, and Chamley dismissed the lawsuit against Dr. Shahin. Dr. Khokha and Mercy Medical Center filed motions for summary judgment, which the district court granted, concluding Dr. Khokha was a "Good Samaritan" as defined by chapter 32, N.D.C.C., and therefore immune from suit. William Chamley concedes that if the court finds Dr. Khokha immune under the Good Samaritan statutes, Mercy Medical Center, as the doctor's employer, is also immune. The district court dismissed William Chamley's lawsuit with prejudice.

## II

[¶ 4] On appeal, William Chamley argues the district court erred in granting summary judgment under the Good Samaritan statutes, because Dr. Khokha was employed to provide hospital patients with vascular surgical skills he was authorized to use. Chamley also argues Dr. Khokha was paid for these services and therefore had an "expectation of remuneration" that exempts him from civil immunity under N.D.C.C. § 32–03.1–04. Chamley claims that as a matter of law, the only conclusion that can be reached is that the hospital and its employee, Dr. Khokha, cannot be considered a "Good Samaritan" or, at the very least, that the issue was one of fact, precluding summary judgment.

[¶ 5] Dr. Khokha and Mercy Medical Center argue they are immune from suit under chapter 32–03.1, N.D.C.C., as a matter of law. They argue Dr. Khokha had no duty to care for Rosie Chamley, a patient not his own, and on whom he operated only because he was asked to help in an emergent, life-threatening situation. Dr. Khokha also argues that his reimbursement for his surgical services does not render him open to suit since doctors are entitled to receive reasonable remuneration under N.D.C.C. § 32–03.1–04 for professional services given in an emergency. Dr. Khokha argues he was not an emergency room physician and therefore was not required to assist Dr. Shahin.

## III

[¶ 6] The three applicable Good Samaritan statutes are found in chapter 32–03.1, N.D.C.C. First, section 32–03.1–02, N.D.C.C., provides immunity from suit for "Good Samaritans":

Actions barred. No person, or the person's employer, subject to the exceptions in sections 32–03.1–03, 32–03.1–04, and 32–03.1–08, who renders aid or assistance necessary or helpful in the circumstances to other persons who have been injured or are ill as the result of an accident or illness, or any mechanical, external or organic trauma, may be named as a defendant or held liable in any personal injury civil action by any party in this state for acts or omissions

arising out of a situation in which emergency aid or assistance is rendered, unless it is plainly alleged in the complaint and later proven that such person's acts or omissions constituted intentional misconduct or gross negligence.

[¶ 7] Second, physicians or surgeons have the right to collect reasonable fees under N.D.C.C. § 32–03.1–04. This section provides:

> Physicians or surgeons. Nothing in this chapter may be construed to deprive any physician or surgeon licensed in this state of the right to collect reasonable fees for any acts of aid, assistance or treatment ... in the course of such aid or assistance under this chapter, of the right to reimbursement, from the injured or ill person or that person's estate for any expenses or damages which appeared reasonable and necessary to incur under the circumstances....

But section 32–03.1–04, N.D.C.C., also provides: "Any person rendering aid or assistance with an expectation of remuneration shall not be covered by the provisions of this chapter."

[¶ 8] Third, section 32–03.1–05, N.D.C.C., provides exceptions:

> This chapter does not encompass a person who, at the time of the emergency, was employed expressly or actually for the purpose of providing emergency medical aid to humans, either within or outside of a hospital or other place or vehicle with medical equipment, for emergency medical aid or other assistance rendered in the regular course of their employment. Such persons and their employers are liable for their acts and omissions in rendering emergency medical aid in the regular course of their employment, according to the prevailing law in this state.

[¶ 9] We first consider whether Dr. Khokha's defense is barred because he had the expectation of payment for providing Rosie Chamley with medical service. William Chamley relies on the statute providing, "Any person rendering aid or assistance with an expectation of remuneration shall not be covered by the provisions of this chapter." N.D.C.C. § 32–03.1–04; *see also* Danny R. Veilleux, Annotation, *Construction and Application of "Good Samaritan" Statutes*, 68 A.L.R.4th 294, 301 (1989) (some statutes provide immunity only for persons who give emergency care without expecting payment). Dr. Khokha responds he is not precluded from claiming protection under the Act because "[n]othing in this chapter may be construed to deprive any physician or surgeon licensed in this state of the right to collect reasonable fees for any acts of aid, assistance or treatment." N.D.C.C. § 32–03.1–04.

[¶ 10] We agree with Dr. Khokha that N.D.C.C. § 32–03.1–04 does not prevent a surgeon from recovering a reasonable fee for services rendered in an emergency. However, that leaves at least one question unanswered: namely, whether the doctor or the hospital can have protection under the Act because of an expectation of payment when services were rendered. *Id.* Here, William Chamley argues Dr. Khokha must have expected remuneration when he entered the operating room because Dr. Khokha billed for his services to Rosie Chamley and because Dr. Khokha is a hospital employee who expects to be paid for medical services rendered in the hospital. William Chamley also argues Dr. Khokha's employment contract required a minimum of 40 hours per week at the hospital, with 36 hours or more of patient contact. The contract prohibited Dr. Khokha from having any other employment in the medical field. Under terms of the contract, Dr. Khokha was required to provide surgical services to hospital patients, as directed by the hospi-

tal. He was compensated by the hospital, on both a salary and an incentive basis. In turn, Dr. Khokha assigned to the hospital all rights to bill and collect fees from patients.

[¶ 11] On the basis of these facts and others in the record, we believe as a matter of law that Dr. Khokha had an expectation of remuneration and that he is not immune from liability under the Act.

[¶ 12] "Statutory interpretation is a question of law, fully reviewable on appeal." *Ballensky v. Flattum–Riemers,* 2006 ND 127, ¶ 22, 716 N.W.2d 110. The words "expectation of remuneration" as used in § 32–03.1–04, N.D.C.C., are not defined in the statute. In ascertaining legislative intent, the Court looks first to the language of the statute as a whole and construes the statute's words in their plain, ordinary, and commonly understood sense. *State v. Ulmer,* 1999 ND 245, ¶ 6, 603 N.W.2d 865. To "expect" is "to anticipate the coming or receipt of." *Webster's Third New International Dictionary* 799 (3d ed.1993).

[¶ 13] Justice Crothers, in his concurring and dissenting opinion, states that the majority has failed to harmonize the words of the entire statute, specifically that part which allows a physician to collect reasonable fees for acts of assistance. Justice Crothers suggests that the majority has failed to recognize the tension between that language and the language regarding expectation of remuneration. This Court must harmonize any apparent conflicting provisions in a statute, if possible. *Frey v. City of Jamestown,* 548 N.W.2d 784, 788 (N.D.1996). These provisions can be harmonized. There is no ambiguity. They are in different tenses. One is speaking to the actor's *expectation* of remuneration at the time of the rendering of aid, and the other is speaking of collecting a fee which *appeared* reasonable. A physician who encounters an emergency outside the hospital setting could volunteer his or her services, with no expectation at that time to collect a fee. Later, on reflection, the physician could send a bill for services, and still benefit from the immunity.

[¶ 14] The record below establishes that Dr. Khokha was a salaried hospital employee who performed a medical service in his employer hospital. He was being "remunerated" by the hospital when he performed the procedure on Rosie Chamley. Because he was being remunerated, as a matter of law, Dr. Khokha anticipated being compensated for his services. Dr. Khokha testified in his deposition that at the time he was "trying to save the patient's life ... and wasn't thinking of anything else...." This testimony, however, does not create an issue of fact that would preclude summary judgment on this issue.

[¶ 15] In *McIntyre v. Ramirez,* 109 S.W.3d 741 (Tex.2003), the Court addressed a case in which a physician was seeing one of his patients in a hospital where he did not work, when he was called to give assistance to another physician. The Court there held that the physician, who was not employed by the hospital, had no expectation of remuneration because of his deposition testimony as follows: "I did not charge the patient for my services nor did I render my services in expectation of compensation. This was not a situation for which I would ever charge." *Id.* at 749. Dr. McIntyre also testified that he did not bill Ramirez and that it would not be ethical to do so. He further testified that he was not aware of anyone in Travis County who would send a bill when they provided emergency care under the circumstances of that case. *Id.*

[¶ 16] Here, Dr. Khokha did not testify that he was not planning to charge a fee for his work. This is not at all surprising, given his status as a salaried physician

performing a procedure in the hospital that employed him.

[¶ 17] The doctor's testimony that he was thinking about saving the woman's life and nothing else does not "set forth specific facts showing that there is a genuine issue for trial." N.D.R.Civ.P. 56(e). Construing Dr. Khokha's testimony as saying that he was not anticipating being compensated for his services is mere speculation and is not sufficient to resist a motion for summary judgment. *See BTA Oil Producers v. MDU Resources Group, Inc.*, 2002 ND 55, ¶ 49, 642 N.W.2d 873.

[¶ 18] It is important to note that it is the combination of Dr. Khokha's being a salaried employee of the hospital *and* performing the procedure in the hospital that caused him to have an expectation of remuneration when he was rendering the aid. If, for example, Dr. Khokha was not employed by the hospital, but was simply there seeing his patient when he was called to assist, he may be able to claim the immunity if he testified similarly to the doctor in *Ramirez*. One would also believe that if Dr. Khokha, a salaried employee of the hospital, came upon an emergency outside the hospital setting, he could claim immunity if he testified similarly to the doctor in *Ramirez*. We do not, however, need to, nor do we, decide these issues today.

[¶ 19] We reverse and remand, concluding that the district court erred in granting summary judgment on the issue of Dr. Khokha's expectation of remuneration, and further concluding that, as a matter of law, Dr. Khokha had an expectation of remuneration. The Good Samaritan Act provides no immunity to Dr. Khokha or Mercy Medical Center.

[¶ 20] DALE V. SANDSTROM and MARY MUEHLEN MARING, JJ., concur.

[¶ 21] The Honorable STEVEN L. MARQUART, D.J., sitting in place of KAPSNER, J., disqualified.

MARING, Justice, concurring specially.

[¶ 22] I concur specially. I agree with the majority that because it is undisputed in the record Dr. Khokha was "remunerated" by the hospital when he performed surgery in the hospital on Rosie Chamley, he did so with "an expectation of remuneration" as a matter of law. However, I am of the opinion that our Good Samaritan Act, N.D.C.C. ch. 32–03.1, does not provide immunity to any hospital physician who would "ordinarily receive" payment for assisting a patient in the hospital during a medical emergency.

[¶ 23] I am persuaded by the legislative history of our Act, its wording and the reasoning used by the Supreme Court of New Jersey in *Velazquez v. Jiminez*, 172 N.J. 240, 798 A.2d 51 (2002), reaching a similar conclusion.

[¶ 24] The issue in this case is whether a physician, Dr. Khokha, and his employer, Mercy Medical Center, are entitled to immunity under North Dakota's Good Samaritan Act. The issue requires an interpretation of the language of the Good Samaritan Act. Our Court has summarized the rules of statutory construction:

> Our duty is to ascertain the Legislature's intent, which initially must be sought from the statutory language itself, giving it its plain, ordinary, and commonly understood meaning. N.D.C.C. §§ 1–02–02 and 1–02–03. If statutory language is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit, because the Legislature's intent is presumed clear from the face of the statute. N.D.C.C. § 1–02–05. If statutory language is ambiguous, a court may resort to extrinsic aids, including

legislative history, to interpret the statute. N.D.C.C. § 1–02–39. A statute is ambiguous if it is susceptible to meanings that are different, but rational. *Shiek v. North Dakota Workers Comp. Bureau,* 2002 ND 85, ¶ 12, 643 N.W.2d 721.

Statutes must be construed as a whole and harmonized to give meaning to related provisions, and are interpreted in context to give meaning and effect to every word, phrase, and sentence. N.D.C.C. §§ 1–02–07 and 1–02–38(2); *Meljie v. North Dakota Workers Comp. Bureau,* 2002 ND 174, ¶ 15, 653 N.W.2d 62; *Doyle ex rel. Doyle v. Sprynczynatyk,* 2001 ND 8, ¶ 10, 621 N.W.2d 353. We presume the Legislature did not intend an absurd or ludicrous result or unjust consequences. N.D.C.C. § 1–02–38(3) and (4); *McDowell v. Gillie,* 2001 ND 91, ¶ 11, 626 N.W.2d 666. We construe statutes in a practical manner and give consideration to the context of the statutes and the purposes for which they were enacted. N.D.C.C. § 1–02–03; *Grey Bear v. North Dakota Dep't of Human Servs.,* 2002 ND 139, ¶ 7, 651 N.W.2d 611.

*Stein v. Workforce Safety and Ins.,* 2006 ND 34, ¶ 9, 710 N.W.2d 364.

[¶ 25] Section 32–03.1–04, N.D.C.C., provides: "Any person rendering aid or assistance with an expectation of remuneration shall not be covered by the provisions of this chapter." This language is an exception to the grant of immunity. The focus becomes: What is meant by "an expectation of remuneration"?

[¶ 26] Chamley specifically argues that Dr. Khokha had an "expectation of remuneration" under the terms of his employment contract with the hospital because he was doing specifically what he was hired to do, which was treat hospital patients with traumatic injuries, and he had already been paid by the hospital and assigned his right to payment to the hospital. Dr. Khokha argues that he did not have "an expectation of remuneration" just because he was a salaried employee of the hospital or that the hospital subsequently billed for his services. Mercy Medical Center, the employer of Dr. Khokha, argues Dr. Khokka had no expectation of remuneration for his services because the relevant issue is Dr. Khokha's subjective expectation, and he testified under oath he was not thinking of anything except saving the patient's life. Perhaps "anticipation" of "pay" or "salary for service," which are the common definitions of "expectation" and "remuneration" from *Merriam–Webster's Collegiate Dictionary* 439 (11th ed.2005) and *Black's Law Dictionary* 1296 (6th ed.1990) seem plain enough. However, if the words mean subjectively whatever the individual physician was thinking at the time, the exception is meaningless, because what physician, in order to qualify for immunity, would not testify after the fact that he expected no compensation. The majority cites *McIntyre v. Ramirez,* 109 S.W.3d 741 (Tex.2003). In that case, the court noted that the Texas Good Samaritan statute defined "two situations in which a person could be deemed to be acting for or in expectation of remuneration: when the person would ordinarily (1) receive or (2) be entitled to receive payment under the circumstances of the case." *Id.* at 746. The Texas Supreme Court also held that the phrase "ordinarily received" "speaks toward what is customary." *Id.* I agree with this more objective definition of with an "expectation of remuneration."

[¶ 27] I am also of the opinion that amendments to the North Dakota Good Samaritan Act, especially the enactment in 1989 of a new section, N.D.C.C. § 32–03.1–02.1, relating to immunity for physicians rendering emergency obstetrical care, create an ambiguity in the North Dakota Good Samaritan Act requiring an

examination of the legislative history of the Act. One of the seminal rules of construction of statutes is to give effect to the whole and meaning to every part rather than a construction that would make one part meaningless. *Wallentinson v. Williams County*, 101 N.W.2d 571, 577 (N.D.1960); *Lawrence v. ND Workers Comp.*, 2000 ND 60, ¶ 19, 608 N.W.2d 254. "The whole is to be examined with a view of arriving at the true intention of each part." *Wallentinson*, at 577.

[¶ 28] Under the common law, a bystander generally had no duty to provide affirmative aid to an injured person, even if he had the ability to do so. *McDowell v. Gillie*, 2001 ND 91, ¶ 6, 626 N.W.2d 666. However, once a bystander voluntarily undertook to render aid the common law recognized a duty to do so reasonably, and the bystander could be liable for injuries caused from the failure to exercise reasonable care. *McDowell*, at ¶ 6; *Velazquez*, 798 A.2d at 56.

[¶ 29] The New Jersey Supreme Court's opinion in *Velazquez* is an impressive analysis of Good Samaritan legislation throughout the country. 798 A.2d at 51. It concludes:

> All fifty states and the District of Columbia have now enacted some form of Good Samaritan legislation.... The country's Good Samaritan statutes broadly can be classified as falling into one of three categories: those that expressly exclude hospital care; those that expressly include hospital care; and those, like New Jersey's, that contain no explicit provision one way or the other. Currently, eleven jurisdictions unequivocally exclude from statutory immunity emergency care rendered to patients within a hospital or other health care facility....
> Conversely, Good Samaritan statutes in seven jurisdictions immunize emergency care provided in a hospital setting.... New Jersey is among twenty-nine states whose statutes fall within the third major category and contain general language that does not explicitly address whether in-hospital care can be shielded from liability under a Good Samaritan statute.

*Velazquez*, 798 A.2d at 57–59. *See generally*, Annot., *Construction and application of "Good Samaritan" statutes*, 68 A.L.R.4th 294, 299–300 (1989).

[¶ 30] North Dakota is one of the twenty-nine states with general statutes like New Jersey's. Our statute immunizes a person who provides "aid or assistance necessary or helpful in the circumstances to other persons who have been injured or are ill as the result of an accident or illness, or ... trauma," without mentioning any geographic limitations. N.D.C.C. § 32–03.1–02.

[¶ 31] In *McDowell*, 2001 ND 91, ¶ 7, 626 N.W.2d 666, we pointed out that "[f]or many years, North Dakota provided immunity to limited segments of the public for care or services given at the time of an emergency." Those Good Samaritan statutes include:

1. N.D.C.C. § 23–27–04.1 (exempting from liability persons who provide volunteer emergency medical services in connection with an emergency medical services operation).

2. N.D.C.C. § 32–03–40 (exempting from liability firefighters, police officers, and peace officers who in good faith render emergency care).

3. N.D.C.C. § 32–03–42 (exempting from liability licensed health care providers who provide health care services in good faith, voluntarily, without compensation, or the expectation of compensation for amateur athletes or at an amateur athletic event).

4. N.D.C.C. § 39–08–04.1 (exempting from liability any person who is an unpaid volunteer and who in good faith renders emergency care "at or near the scene of an accident, disaster, or other emergency, or en route to a treatment facility" but stating liability is not relieved if the emergency care was for remuneration or with the expectation of remuneration).

5. N.D.C.C. § 43–12.1–12 (exempting from liability a licensed nurse who, in good faith, provides nursing care at the scene of an emergency or disaster).

6. N.D.C.C. §§ 43–17–37 and 43–17–38 (providing that a North Dakota licensed physician or surgeon or a nonresident physician or surgeon, who in good faith renders emergency care at the scene of an emergency is expected to render only such emergency care as in the person's judgment is at the time indicated).

[¶ 32] In 1987, the North Dakota Legislative Assembly enacted the Good Samaritan Act, N.D.C.C. ch. 32–03.1.1987 N.D. Sess. Laws ch. 403, § 1. The Act specifically supersedes any conflicting provisions of law which were inconsistent with the Act, "except sections 23–27–04.1, 32–03–40, 32–03–42, 39–08–04.1, 43–12.1–12, 43–17–37, and 43–17–38," which are referenced above. N.D.C.C. § 32–03.1–06.

[¶ 33] House Bill 1631 was introduced by Representative Janet Wentz at the request of the Trestle Valley Ski Patrol of Minot, North Dakota, a non-profit organization devoted to providing gratuitous emergency first aid to injured ski enthusiasts. The Trestle Valley Ski Patrol believed that although there were already a number of Good Samaritan statutes, the broad law was contained in the motor vehicle code and there was no clear exemption for "someone who assists a choking victim in a restaurant, gives CPR to a heart attack victim or a cab driver helping an expectant mother." *See* letter dated January 21, 1987, to the Honorable Janet Wentz proposing Good Samaritan statute and submitted in to the Senate Judiciary Committee in support of H.B. 1631. Representative Janet Wentz, the sponsor, testified:

> HB 1631 is a so-called "good samaritan" bill. It simply exempts from liability members of the public who might render assistance to victims of accident and illness. There's no immunity in the bill for aid rendered in a way which would constitute intentional misconduct or gross negligence. The bill provides criminal immunity for anyone who renders aid; they may not then be charged with practicing medicine without a license. *It doesn't deprive physicians from the right to collect a fee for rendering emergency aid. It does not encompass anyone acting in this fashion who was at the time employed expressly to render aid. It's only for persons who might be off duty and members of the public.*

*See Hearing on H.B. 1631 Before the Senate Judiciary Comm.*, 50th N.D. Legis. Sess. (March 16, 1987) (testimony of Rep. Janet Wentz) (emphasis added).

[¶ 34] A Minot attorney, Don Negaard, representing the National Ski Patrol Association, testified that H.B. 1631 was referring to exemption from liability for ski patrol who render assistance to accident victims. *See Hearing on H.B. 1631 Before the House Judiciary Comm.*, 50th N.D. Legis. Sess. (February 3, 1987) (testimony of Don Negaard). Negaard testified that other laws do not cover a choking victim in a restaurant. *Id.* Negaard further testified that the "bill specifically states that, if you are doing it for compensation, then you are not covered by this

bill, but if you do it gratuitously then you are covered by provision of this bill." *Id.*

[¶ 35] Thus, the request to broaden the class of individuals and types of emergencies covered came from a ski patrol group and an assumption that the existing Good Samaritan law at N.D.C.C. § 39–08–04.1 applied only to motor vehicle situations. *See Hearing on H.B. 1631 Before the Senate Judiciary Comm.,* (March 16, 1987) (testimony of Senator Maxson and Rep. Janet Wentz).

[¶ 36] Clearly, the legislature was provided with testimony that pointed out emergency situations involving locations other than a motor vehicle accident scene and persons rendering aid, other than physicians, in need of immunity from liability. The legislative history never mentions or even hints at a need or intention to broaden the Good Samaritan laws to include in-hospital emergency care by physicians or other health care professionals. The entire impetus for and focus of the Act were situations presenting emergencies outside of a hospital setting other than a motor vehicle accident where a person would render assistance gratuitously and without remuneration.

[¶ 37] In 1989, the North Dakota legislature enacted a new section to the Good Samaritan Act, ch. 32–03.1 relating to immunity from civil liability for certain physicians rendering emergency obstetrical care. 1989 N.D. Sess. Laws ch. 410, § 1. Under section 32–03.1–02.1, a physician is immunized from liability if he renders emergency obstetrical care or assistance to a pregnant female in active labor, who had not previously been cared for in connection with the pregnancy by the physician. The immunity from civil liability, however, does not extend to a physician who renders emergency assistance with "an expectation of remuneration or who collects a fee for rendering that care or assistance." *Id.* This new section was enacted to provide

immunity from liability to a rural physician who wanted to drop his obstetric practice and malpractice coverage, therefor, but still wanted to be able to assist in emergency deliveries without the fear of suit. *See Hearing on S.B. 2422 Before the House Judiciary Comm.,* 51st N.D. Legis. Sess. (March 14, 1989) (testimony of sponsor Senator Kelsh). Although the statute does not specifically state it applies to in-hospital or other medical facility, it appears from the legislative history the assumption was that these services would be rendered in medical facilities. *See id.* (testimony of sponsor Senator Kelsh) (stating "[i]f someone traveling through town had an emergency situation, he could not tend to that person at that facility and deliver the child under safe conditions no matter what"). *See also Hearing on S.B. 2422 Before Senate Human Services and Veteran Affairs Comm.,* 51st N.D. Legis. Sess. (Feb. 10, 1989) (testimony of sponsor Senator Kelsh) (stating "when a physician had not ever before seen the patient, had no medical records of the patient, and this person showed up at the clinic ready to deliver, the physician could then deliver the baby, receive no pay, and be covered under the Good Samaritan Act"). All of these circumstances would have been already covered by the existing Good Samaritan Act if the legislature had intended it to cover emergency assistance rendered in-hospital or in other medical facilities. There is a presumption the legislature acts with purpose and does not perform an idle act. *Wheeler v. Gardner,* 2006 ND 24, ¶ 15, 708 N.W.2d 908; *see also* N.D.C.C. § 1–02–38 (providing that "[i]n enacting a statute, it is presumed . . . [t]he entire statute is intended to be effective"). The legislature concluded it needed to extend immunity specifically to physicians rendering emergency assistance in a hospital or clinic setting to pregnant women in active labor, who the physician had not previous-

ly cared for and whose medical records are not reasonably available. Adopting the majority's construction would render N.D.C.C. § 32–03.1–02.1 an idle act.

[¶ 38] Also of significance is the provision under N.D.C.C. § 32–03–02.1, which provides that the physician who renders emergency obstetric care is not entitled to the immunity if the emergency assistance is rendered with an expectation of remuneration *or* a fee is collected for rendering that assistance. I have great difficulty in understanding why the legislature would intend that, under § 32–03–02.1, the physician who renders emergency care to a pregnant woman in a hospital or clinic setting is not entitled to immunity if a fee is collected after the fact, but Dr. Khokha, a hospital physician and vascular surgeon, performing emergency surgery in the hospital, along side the patient's physician with all the information and technology available is entitled to immunity even though a fee is collected after the fact.

[¶ 39] I am convinced by this legislative history that our legislature never intended for our "Good Samaritan Act" to extend immunity to hospital physicians who render emergency medical care in a hospital. I agree with Stewart R. Reuter, who observed in *Physicians as Good Samaritans*, 20 J. Legal Med. 157, 189 (1999):

[P]hysicians who care for patients in hospitals are not volunteers in the sense of the person who by chance comes upon the scence [sic] of an accident. Moreover, physicians who provide emergency care in hospitals have at their disposal all the modern diagnostic and therapeutic equipment. Granted, they may not be familiar with the patient's medical history or disease and are at somewhat of a disadvantage when compared with the patient's personal physician. However, this disadvantage does not rise to the level of the difficulty that confronts the physician who stops at the site of a roadside accident, who can provide little more than first-aid until the EMS team arrives. In many cases, the physician or surgeon whose expertise is being requested in a hospital emergency will work with a physician or with hospital personnel who have excellent knowledge of the patient's condition and problems. Even if no other physician is already involved in the emergency, the duration of care provided generally is short—until the hospital's trained Code Blue team arrives.

I urge the legislature to amend the Good Samaritan Act to define "with an expectation of remuneration" such that the immunity defense is not available to persons who "ordinarily receive remuneration" for rendering care to a patient in a hospital setting.

[¶ 40] I agree with the majority that under the facts, this case must be reversed and remanded for further proceedings under our law governing the conduct of physicians in a hospital setting.

[¶ 41] Mary Muehlen Maring

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 42] I cannot agree that as a matter of law North Dakota's Good Samaritan Act precludes a physician from claiming immunity from civil liability for actions taken while providing voluntary assistance during an in-hospital medical emergency. I therefore concur in the result because I would have remanded this case for trial on disputed issues of fact arising under our law.

[¶ 43] The majority holds as a matter of law that Dr. Khokha cannot be immune from suit because he was paid for rendering medical care within his employer's hospital. I disagree with them because they

read more into our law than the Legislature said, and because implicit in their holding is that Dr. Khokha had a duty as a matter of law to treat any and all patients who cross the hospital threshold.

[¶ 44] Important facts in this case include that Dr. Khokha had no prior relationship with or connection to Rosie Chamley. She was not his patient, and he had never treated, diagnosed, or participated in any care or treatment of Rosie Chamley before he entered the operating room. Dr. Khokha had no employment or business relationship with Rosie Chamley's surgeon, Dr. Shahin. Dr. Khokha responded to Dr. Shahin's request for help during surgery on Rosie Chamley, when she experienced a life-threatening situation. But, as Dr. Shahin testified, Dr. Khokha had no obligation to enter the operating room and assist. Indeed, Dr. Khokha answered Dr. Shahin's urgent call for help after another surgeon employed by Mercy Hospital refused—with impunity—to assist.

[¶ 45] Dr. Khokha was not an emergency room physician whose job was to provide emergency medical care. Nothing in his contract required Dr. Khokha to provide emergency medical services. At the time of Rosie Chamley's emergency, Dr. Khokha was not "on call" for emergencies and he was not part of a "code blue" or emergency response team. Instead, he was in the physicians' lounge at the hospital, waiting for surgical staff to become available so he could begin operating on his own patient.

[¶ 46] The majority holds as a matter of law that Dr. Khokha had an expectation of remuneration disqualifying him from immunity under the Act because he was a salaried employee of the hospital where he rendered the care giving rise to this suit. Their conclusion is reached in reliance on that part of N.D.C.C. § 32–03.1–04 providing: "Any person rendering aid or assistance with an expectation of remuneration shall not be covered by the provisions of this chapter." However, their disposition-as-a-matter-of-law fails to harmonize words of the entire statute. They therefore ignore, or perhaps find superfluous, the preceding portion of the same statute providing:

> Nothing in this chapter may be construed to deprive any physician or surgeon licensed in this state of the right to collect reasonable fees for any acts of aid, assistance or treatment. . . .

N.D.C.C. § 32–03.1–04.[1]

[¶ 47] As an apparent proxy for harmonizing express words of this statute, they instead conclude availability of immunity is determined by going outside the statute and *adding* a test for the physical location where Dr. Khokha rendered services. *See* Majority opinion at ¶ 18 ("It is important to note that it is the combination of Dr. Khokha's being a salaried employee of the hospital *and* performing the procedure in the hospital that caused him to have an expectation of remuneration when he was rendering the aid.") (emphasis in original). Doing so, they ignore the rules of statutory construction requiring that we

1. The statute reads in its entirety: 32–03.1–04. Physicians or surgeons. Nothing in this chapter may be construed to deprive any physician or surgeon licensed in this state of the right to collect reasonable fees for any acts of aid, assistance or treatment; or any other person rendering aid or assistance under this chapter, or those whose property is necessarily damaged in the course of such aid or assistance under this chapter, of the right to reimbursement, from the injured or ill person or that person's estate for any expenses or damages which appeared reasonable and necessary to incur under the circumstances. Any person rendering aid or assistance with an expectation of remuneration shall not be covered by the provisions of this chapter.

read the Act as a whole and harmonize its provisions, they improperly add words to the statute that the Legislature did not see fit to include, and they overlook the underlying purpose of the Good Samaritan Act.

[¶ 48] We are required to construe and apply statutes by looking first at the words used in the statute, giving them their plain, ordinary, and commonly understood meaning. N.D.C.C. § 1–02–02. When an ambiguity exists, as it does here, we must read related sentences and statutes as a whole to harmonize and give meaning to each word and phrase. *See Lawrence v. N.D. Workers Comp. Bureau,* 2000 ND 60, ¶ 19, 608 N.W.2d 254 (citations omitted).

[¶ 49] Section 32–03.1–04, N.D.C.C., both allows a physician to charge a fee for services in connection with treatment rendered, and withholds immunity if services are rendered "with an expectation of remuneration." I read these separate provisions of the same statute, together with the record before us, and conclude summary judgment was inappropriate because there is not but one conclusion to be reached.

[¶ 50] Dr. Khokha had no medical relationship with Dr. Shahin or Rosie Chamley. Dr. Khokha was not an emergency medical provider. He was not on call to attend emergencies encountered by other patients. Nor was he on a "code" or emergency response team. He arguably had no obligation to join Dr. Shahin's surgery. Dr. Khokha was present in the hospital to perform surgery on his own patient and was being paid by Mercy Hospital regardless whether he volunteered to help save the patient's life. He therefore had "an expectation of remuneration" even if he ignored Dr. Shahin's plea for help and stayed in the doctors' lounge to watch television. Under these circumstances, I cannot agree with my colleagues that Dr. Khokha should be stripped of immunity as a matter of law because he received the

same pay for trying to save the life of another physician's patient as he would have, had he done nothing.

[¶ 51] The majority and Justice Maring avoid analyzing the tension in section 32–03.1–04 by concluding for all time and in all cases that doctors have no immunity when services are rendered in the hospital where the physician is employed and paid for rendering services. Majority opinion at ¶ 19; Maring concurrence at ¶ 22. I disagree with their flawed approach because it adds a term to the statute that the Legislature did not.

[¶ 52] The majority reads section 32–03.1–04 as if it included words limiting immunity to actions outside hospitals. But North Dakota's Good Samaritan Act provides no such location-specific restriction for coverage under the circumstances of this case, a conclusion conceded by Justice Maring. Maring concurrence at ¶ 30. By comparison, the Legislature has demonstrated it knows how to create location-specific limitations for application of the Act when it wants to do so. *See* N.D.C.C. § 32–03.1–05 ("This chapter does not encompass a person who, at the time of the emergency, was employed expressly or actually for the purpose of providing emergency medical aid to humans, *either within or outside of a hospital or other place or vehicle with medical equipment,* for emergency medical aid or other assistance rendered in the regular course of their employment.") (emphasis added).

[¶ 53] Long-standing precedent of this Court requires that we conclude, "The Legislature must be presumed to have meant what it said, and all that it said, and nothing else." *State v. Myers,* 73 N.D. 687, 710, 19 N.W.2d 17, 29 (1945) (citing *City of Dickinson v. Thress,* 69 N.D. 748, 755, 290 N.W. 653, 657 (1940)). Unlike the majority and Justice Maring, I would take the Legislature at its word. I would not

add language to the statute or impose restrictions on application of the Act that are not present in the plain words of the Legislature.

[¶ 54] I also believe adding an exclusion for hospital emergencies is contrary to public policy supporting the Act. "The obvious purpose of the Good Samaritan Act is to encourage those who do not have a preexisting duty to voluntarily act in times of emergency by limiting the threat of civil liability for the actions taken." *McDowell v. Gillie*, 2001 ND 91, ¶ 13, 626 N.W.2d 666. This observation of legislative purpose is widely shared by other jurisdictions. *See McKenna v. Cedars of Lebanon Hosp.*, 93 Cal.App.3d 282, 288, 155 Cal. Rptr. 631 (1979) (hospital physician considered "volunteer" even though he was chief resident); *see also Burciaga v. St. John's Hosp.*, 187 Cal.App.3d 710, 716, 232 Cal. Rptr. 75 (1986) (doctor's presence in hospital and his status as active staff member not sufficient to establish pre-existing duty); *Hirpa v. IHC Hospitals, Inc.*, 948 P.2d 785, 792 (Utah 1997) (physicians are protected by the Act when they respond to in-hospital emergency if they have no preexisting duty to do so); *Henry v. Barfield*, 186 Ga.App. 423, 367 S.E.2d 289, 291 (1988) (questions of material fact remained about hospital physician's preexisting duty when he responded to in-hospital emergency when not "on call").

[¶ 55] The Utah Supreme Court stated: Courts in other states "have uniformly held that the law is not meant to exempt all medical personnel in every emergency situation, but only those personnel who happen across an emergency outside the normal course of their work and *who otherwise have no duty to assist.*" *Hirpa*, 948 P.2d at 790 (emphasis in original) (citations omitted).

If the doctor had a particular employment duty to aid the patient at the hospital ... then he had a duty to the patient to begin with; and in such a case he does not need a special inducement to offer aid, the aid he offers is not "voluntary" in the sense of a Good Samaritan, and public policy would be ill-served if he were relieved of the usual physician's duty of care and given immunity in such a case.

*Id.*

[¶ 56] The New Jersey Supreme Court considered a case with similar issues to those at bar, and a dissenting Justice astutely observed:

I do not advocate the wholesale immunization of physicians and other professionals in hospitals. Rather, I would continue to tether the Good Samaritan statute to its original moorings, meaning I would apply its protections unless the person who administered the emergency aid had a pre-existing duty to act. *See Praet v. Borough of Sayreville*, 218 N.J.Super. 218, 224, 527 A.2d 486 (App. Div.) (observing that "threshold question in determining the applicability of the Good Samaritan Act is whether the person claiming its immunity had a preexisting duty"), *certif. denied,* 108 N.J. 681, 532 A.2d 253 (1987).

After remand, we might well conclude that Dr. Ranzini had such a duty and that she, and indeed most of her medical colleagues, would fall outside the purview of the Act. I am unwilling to reach that conclusion as a matter of law. Nor would I restrict the Act to all emergent situations except those found in a hospital unless the statute explicitly contained that restriction, which it does not.

*Velazquez v. Jiminez*, 172 N.J. 240, 798 A.2d 51, 66–67 (2002) (Verniero, J., dissenting).

[¶ 57] Here, Dr. Khokha had no affiliation with Dr. Shahin, and he had no doctor-patient relationship with Rosie Chamley before voluntarily entering the operating room to help Dr. Shahin. Nei-

ther Dr. Khokha nor Dr. Shahin thought Dr. Khokha had a duty to treat Rosie Chamley. Another surgeon employed by Mercy Hospital refused to join the life-saving efforts. These facts suggest to me that Dr. Khokha was among those whom the Legislature was trying to induce to act without fear of liability. The result reached by the majority removes that inducement and reduces the chance the next patient in Rosie Chamley's situation will survive the operating room. This can hardly be the result envisioned by the Legislature when adopting the Good Samaritan Act. *See Sagan v. United States,* 342 F.3d 493, 498 (6th Cir. 2003) (" 'The test is not whether the risk was increased over what it would have been if the defendant had not been negligent,' but rather whether 'the risk was increased over what it would have been had the defendant not engaged in the undertaking at all.' ").

[¶ 58] Finally, I note Justice Maring's effort to capture the legislative intent behind North Dakota's Good Samaritan Act as a whole. She gathers statements made during several legislative sessions which relate to a number of the different provisions in N.D.C.C. ch. 32–03.1. That exercise is destined to fail because chapter 32–03.1 is not a cohesive "Act" but a collection of immunity provisions aimed at protecting certain health care providers acting under specific circumstances. *See* Danny R. Veilleux, Annotation, *Construction and application of "Good Samaritan" statutes,* 68 A.L.R.4th 294, § 2[a] ("Issues of statutory applicability based on the particular party claiming coverage, like those based on the location of the treatment, must naturally be resolved with close attention to the particular statute granting the immunity.").

[¶ 59] When examining North Dakota's particular statutes, I do not claim to understand the dramatically different legislative philosophy behind N.D.C.C. § 32–03.1–04 which grants immunity for emergency care while allowing doctors "the right to collect reasonable fees" and N.D.C.C. § 32–03.1–02.1 which withholds immunity for doctors rendering obstetrical care if they "collect[] a fee for rendering that care or assistance." Nevertheless, that policy decision is left to the legislative branch and, absent constitutional infirmity, we judges cannot occupy ourselves with the wisdom of the enactment.

[¶ 60] Viewing the evidence in the light most favorable to Chamley, and giving Chamley the benefit of all favorable inferences, I would conclude summary judgment was not appropriate. Whether Dr. Khokha had an expectation of remuneration and whether he had a duty to care for Rosie Chamley under the facts of this case are not questions suitable for summary judgment. I would have reversed this case and remanded for trial. Having been unable to convince a majority of my colleagues to do so, I concur only in the result only to the extent we reverse the district court.

[¶ 61] GERALD W. VANDE WALLE, C.J., concur.